2011 UT App 232

**COMMONWEALTH PROPERTY ADVOCATES, LLC, Plaintiff and Appellant,**

v.

**MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC.; CitiMortgage, Inc.; and John Does of unknown number, Defendants and Appellees.**

No. 20100888–CA.

Court of Appeals of Utah.

July 14, 2011.

Rehearing Denied Aug. 10, 2011.

E. Craig Smay, Salt Lake City, for Appellant.

Anthony C. Kaye, Angela W. Adams, and Steven D. Burt, Salt Lake City, for Appellees.

Before Judges DAVIS, McHUGH, and VOROS.

## OPINION

DAVIS, Presiding Judge:

¶1 Commonwealth Property Advocates, LLC (CPA) appeals from the district court's grant of summary judgment in favor of defendants Mortgage Electronic Registration System, Inc. (MERS) and CitiMortgage, Inc. (Citi). We affirm.

## BACKGROUND

¶2 A home buyer (Home Buyer) executed a promissory note (the Note) in favor of her lending bank (Lender) for $417,000 secured under the terms of a Deed of Trust describ-

ing property in Eagle Mountain, Utah, as collateral for the debt. The Deed of Trust identified MERS as the "nominee for Lender and Lender's successors and assigns" and as the "beneficiary under this Security Instrument." In the original Note, Lender assigned its servicing rights to Citi, which at all relevant times remained the servicer of the Note and to which Home Buyer made payments. Home Buyer defaulted on the Note, and on approximately December 8, 2009, the Successor Trustee to the Deed of Trust recorded a Notice of Default and Election to Sell.[1] On December 6, 2009, MERS assigned its "beneficial interest" to Citi, which was recorded on January 6, 2010. On December 31, 2009, a quitclaim deed was recorded by which Home Buyer transferred her interest in the Eagle Mountain property to CPA.

¶3 CPA filed a complaint in February 2010 that stated four causes of action based upon its assertion that the Deed of Trust was separated from the Note shortly after being executed and therefore is and "has been un-enforceable by defendant[s]" for quite some time. In support of its arguments, CPA alleged that Lender promptly sold the debt represented by the Note to the Federal National Mortgage Association (Fannie Mae) and subsequently securitized Home Buyer's debt.[2] CPA argues that the

> sale of the loan to Fannie Mae, and any further re-sale as mortgage-backed securities, transferred the beneficial interest in the trust deed to the current owner of the debt, [i.e., the investors in the mortgage-backed securities] and that defendants, having been paid off in the sale of the loan, could not seek a second payoff by foreclosure of the Trust Deed.

This principle, CPA argues, is supported by Utah Code section 57–1–35, *see* Utah Code Ann. § 57–1–35 (2010) ("The transfer of any debt secured by a trust deed shall operate as a transfer of the security therefor."). The securitization, CPA claims, separated the debt from the security, "releas[ing] the realty from enforcement of the security by" MERS

---

1. The property was sold at a trustee's sale on April 8, 2010, which resulted in Home Buyer's obligation under the Note being fully satisfied. The parties do not argue and we, accordingly, do not address the applicability of Utah Code section 57–1–28(3), *see* Utah Code Ann. § 57–1–28(3) (2010) ("The trustee's deed shall operate to convey to the purchaser, without right of redemption, the trustee's title and all right, title, interest, and claim of the trustor and the trustor's successors in interest and of all persons claiming by, through, or under them, in and to the property sold, including all right, title, interest, and claim in and to the property acquired by the trustor or the trustor's successors in interest subsequent to the execution of the trust deed, which trustee's deed shall be considered effective and relate back to the time of the sale.").

2. In general, securitization refers to the process of pooling debts, such as mortgage loans, and selling shares in the pool to investors as a means of infusing the lending markets with more capital. *See* Christopher L. Peterson, *Predatory Structured Finance*, 28 Cardozo L.Rev. 2185, 2186 n. 1 (2007); *see also id.* at 2188 (explaining that when securitization is not fraught with predatory lending practices, it generally provides consumers with "new access to cheap capital, making ... home ownership more affordable at the margins"); *id.* at 2196–2200 (explaining that securities investments offered through the government-sponsored organizations, Fannie Mae and Freddie Mac, and the government-backed organization, Ginnie Mae, are considered relatively liq-uid and low risk). MERS is a regular player in securitization and maintains a massive computer database that tracks the ownership and servicing rights associated with about half of all mortgages in the United States. *See id.* at 2211–12. MERS is also increasingly named as a "nominee" on mortgage notes, a position intended to simplify the note holder's ability to foreclose on a securitized mortgage. *See id.* at 2212–13 (explaining that MERS's role as nominee also serves the purpose of avoiding fees associated with updating county records to reflect ever-changing assignment interests). Ultimately, the financial crisis marking recent years, in a simplified sense, was a result of securitization and the predatory lending abuses common in its practice, *see id.* at 2214–15 & n. 182 (describing predatory lending practices to include lenders' disregard for their own underwriting guidelines, "misleading terms[,] high pressure sales[,] unnecessary insurance[,] unnecessarily harsh prepayment penalties[,] forgery[,] collusion with disreputable home improvement contractors or other vendors[,] distorting loan structure to avoid the application of consumer statutes[, and] extending credit without regard to the borrower's ability to repay"). Thus, when housing prices dropped around 2008, so did the value of mortgage-backed securities, as well as other "asset-backed securities," causing a domino effect that "spread to other asset classes, causing financial institutions that were reliant on short-term collateralized debt for their funding[ ] severe liquidity problems." *See* Bernard S. Sharfman, *Using the Law to Reduce Systemic Risk*, 36 J. Corp. L. 607, 611 (2011).

and Citi. Although CPA claims this does not exonerate the debt obligation, it also argues, somewhat contrarily, that this leaves the Note entirely unsecured by the property under the terms of the Deed of Trust.[3] It is for this alleged "cloud on the title" that CPA initiated the immediate lawsuit seeking estoppel, declaratory judgments, quiet title, and refunds.

¶4 MERS and Citi moved to dismiss CPA's complaint, stating that CPA's argument "that transferring a note secured by a trust deed as part of a securities transaction renders the note an unsecured obligation ... is without legal support and fails as a matter of law." In its memorandum decision, the district court converted the motion to dismiss to one for summary judgment because of what it determined to be extraneous document evidence attached to both parties' pleadings. *See generally Oakwood Vill. LLC v. Albertsons, Inc.*, 2004 UT 101, ¶12, 104 P.3d 1226 ("[A] motion to dismiss 'shall be converted into one for summary judgment if matters outside the pleadings are presented to and not excluded by the court.'" (quoting Utah R. Civ. P. 12(b))). The district court subsequently granted summary judgment in favor of MERS and Citi. In rendering its decision, the district court ruled that "[t]he premise underlying each of [CPA's] causes of action is an assertion that Defendants lost the right to initiate foreclosure proceedings on the property when the Note was 'securi-

tized.'" The district court then characterized this underlying principle as a "mere conclusory allegation[ ]," *see Chapman ex rel. Chapman v. Primary Children's Hosp.*, 784 P.2d 1181, 1186 (Utah 1989), and found that "the express terms of the Trust Deed unassailably provide that MERS has the right to foreclose upon the Property, even if [Lender] sold the Note." CPA moved to reconsider on the ground that the conversion of the motion to dismiss into a motion for summary judgment was improper. The district court denied CPA's motion to reconsider. CPA now appeals from the final summary judgment order, arguing again that the district court's conversion of the motion to dismiss into a motion for summary judgment was improper. CPA requests that we reverse and remand with instructions for the district court to deny MERS and Citi's motion to dismiss based on its assertion that its "underlying principle"-that securitization stripped MERS and Citi of the right to initiate foreclosure proceedings on the Eagle Mountain property-is a factual statement. *See generally Berneau v. Martino*, 2009 UT 87, ¶3, 223 P.3d 1128 (explaining that when ruling on a motion to dismiss, the district court must assume the factual statements contained in the complaint are true).

## ISSUES AND STANDARDS OF REVIEW

¶5 Although often overlapping, CPA basically presents two issues on appeal.

---

3. This argument rests on the bare assertion that the investors, in addition to MERS and Citi, failed to obtain an assignment under the Deed of Trust, thereby leaving the Deed of Trust in limbo—a tail without a cow, *see infra* ¶13. This argument is one of many made by CPA that appear to evolve throughout the record. For instance, in its complaint, CPA requested that title to the property be quieted in its name and sought a declaratory judgment stating the same. Yet during the hearing on the motion for summary judgment, CPA claimed it was merely seeking the opportunity to settle Home Buyer's debt with the securities investors, whom it deems to be the current owners of the debt. Likewise, in its reply brief, CPA explains that it is not arguing that "securitization 'splits' the debt and the security, or that it renders either unenforceable[,] ... [but] that securitization lodges both in the investors." However, a few pages later, CPA states, "Any theory upon which, following sale of the debt by lender, MERS retains rights in the trust deed, except as agent of the new owner of the debt, plainly effects a separation of the debt and

security, rendering the security unenforceable." Indeed, throughout the record, CPA's statements of numerous issues are often inconsistent to the point they appear self-contradictory. Thus, our recitation of CPA's issue statements are taken primarily from CPA's complaint and opening brief. We do so in recognition of rule 24 of the Utah Rules of Appellate Procedure, *see* Utah R.App. P. 24, compliance with which "permit[s] meaningful appellate review" by enabling us to understand the issues on appeal, *see Burns v. Summerhays*, 927 P.2d 197, 199 (Utah Ct.App. 1996). Additionally, we decline to address arguments raised in CPA's reply brief to the extent that they are new arguments rather than responses to issues raised in the Appellees' opening brief and contradict statements made in CPA's opening brief and complaint. *See Brown v. Glover*, 2000 UT 89, ¶¶21, 23, 16 P.3d 540 (explaining the general rule that arguments raised for the first time in a reply brief may not be considered if the arguments are not addressing new issues raised in the appellee's brief).

First, CPA argues that under the terms of the Deed of Trust, the securitization of the Note stripped the assignee of its ability to foreclose on behalf of successor beneficiaries and that Utah Code section 57–1–35 supports this contention. This presents a legal question, which we review for correctness. *See State v. Pena,* 869 P.2d 932, 935–36 (Utah 1994) ("Legal determinations . . . are defined as those which are not of fact but are essentially of rules or principles uniformly applied to persons of similar qualities and status in similar circumstances.").

■ ¶ 6 Second, CPA argues that the district court erred when it converted the motion to dismiss into one for summary judgment and that it would have been inappropriate to grant the motion to dismiss. A district court's ruling on either a motion to dismiss or a motion for summary judgment is a legal question which we review for correctness, *see U.S.A. United Staffing Alliance, LLC v. Workers' Comp. Fund,* 2009 UT App 160, ¶ 7, 213 P.3d 20; *see also Jacobsen Constr. Co. v. Teton Builders,* 2005 UT 4, ¶ 10, 106 P.3d 719 (observing that the district court's denial of a motion to dismiss is a legal question to be reviewed under a correctness standard). "In order to justify reversal[,] the appellant must show error that was substantial and prejudicial in the sense there is at least a reasonable likelihood that in the absence of the error the result would have been different." *Ortega v. Thomas,* 14 Utah 2d 296, 383 P.2d 406, 408 (1963); *see also* Utah R. Civ. P. 61 (providing that a harmless error is one that "does not affect the substantial rights of the parties" and must be disregarded).

## ANALYSIS

### I.  Effect of Securitization

¶ 7 CPA's complaint raises three substantive causes of action.[4] First, CPA seeks an "Estoppel/Declaratory Judgment," alleging that MERS and Citi failed to respond to information requests regarding the interests of their "assignees." Without this information, CPA argues, Home Buyer and CPA, as Home Buyer's successor in title, are at risk of multiple claims on the Note that render proper discharge of the obligation impossible. CPA argues that this refusal to supply information estopped MERS and Citi from foreclosing on the Deed of Trust and that a declaratory judgment should be entered declaring "that defendants . . . lack any interest under the Trust Deed."

¶ 8 In its second cause of action, CPA again seeks a declaratory judgment that MERS and Citi lack any interest under the terms of the Deed of Trust. In support of this contention, CPA argues that MERS, Citi, and any investors who invested in Home Buyer's securitized debt, failed to obtain assignment of the Deed of Trust. Because of this, and in light of CPA's claimed acquisition of the property as a "bona fide purchaser" for value without notice of the other parties' claim under the Deed of Trust, CPA contends that MERS, Citi, and the securities investors cannot assert any rights under the Deed of Trust. As mentioned in the first cause of action, CPA attributes its lack of notice to MERS's and Citi's failure to respond to its information requests.

¶ 9 Third, CPA seeks a decree quieting title in its favor, "leaving any obligation under the Note unsecured by any interest in the subject property." As stated in the first two causes of action, CPA claims that because MERS and Citi failed to retain an interest under the Note, and because of the fragmentation of the debt via securitization, CPA no longer knows who the obligee of the debt is and therefore cannot safely discharge the obligation under the Note.

■ ¶ 10 We agree with the district court that CPA's "underlying principle" that securitization of the Note nullified MERS's and Citi's rights under the terms of the Deed of Trust is a "mere conclusory allegation[ ]," *see Chapman ex rel. Chapman v. Primary Children's Hosp.,* 784 P.2d 1181, 1186 (Utah 1989), an "inference suggested but not established," and an "assumption." This conclu-

---

4. The fourth cause of action sought reimbursement of expenses, fees, and reasonable attorney fees.

sion is not affected by whether CPA was prepared for the motion to be treated as one for summary judgment; rather, our conclusion is consistent with the rights carved out for MERS by the terms of the Deed of Trust incorporated into the complaint, which, as the district court explained by adopting MERS and Citi's arguments, apply "regardless of who may have purchased, in whatever form, the right to receive payment under the Note." [5] The Deed of Trust names MERS as "nominee for Lender and Lender's successors and assigns" and extends to MERS the right "to exercise any or all of [Lender's] interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing and canceling th[e] Security Instrument." In interpreting an identical trust deed provision, the United States District Court for the District of Utah has held numerous times that even in the face of securitization, the provisions of the Deed of Trust continue to grant MERS "the authority to initiate foreclosure proceedings, appoint a trustee, and to foreclose and sell the property." *See Commonwealth Prop. Advocates, LLC v. Mortgage Elec. Registration Sys., Inc.,* No. 2:10–CV–340–TS, 2010 WL 3743643, at *3 (D.Utah Sept. 20, 2010) (mem.); *see also Commonwealth Prop. Advocates, LLC v. First Horizon Home Loan Corp.,* No. 2:10–CV–375, 2010 WL 4788209, at *2 (D.Utah Nov. 16, 2010) (mem.); *Burnett v. Mortgage Elec. Registration Sys., Inc.,* No. 1:09–CV–00069–DAK, 2009 WL 3582294, at *4 (D.Utah Oct. 27, 2009) (mem.). We agree. We also agree with the federal district court's related rulings and the ruling of the state district court involved in this action that CPA has failed to explain how the securitization of the Note could have revoked this language in the Deed of Trust. *See First Horizon Home Loan Corp.,* 2010 WL 4788209, at *2 (involving identical language in a trust deed and a very similar fact pattern to the one in this case and concluding, "Plaintiff has not satisfied

the pleading requirement to show that because of the alleged securitization MERS is no longer the lender's nominee with the authority to foreclose on behalf of the note holders.").

¶ 11 CPA relies on Utah Code section 57–1–35 in support of its "underlying principle" that MERS and Citi lost their rights under the Deed of Trust when the Note was securitized. CPA argues that the statute provides that the Deed of Trust, and all of the rights associated with it, were transferred with the Note to the investors when the Note was securitized, thereby stripping MERS and Citi of any rights carved out in the terms of the Deed of Trust. Impliedly, CPA argues that the statute prevents the original parties to the Deed of Trust from contracting in a manner that binds Lender's successors and assigns. Additionally, somewhat contrary to its reliance on section 57–1–35, CPA seeks a decree quieting title in its favor even though such a decree would, as CPA frames it, "leav[e] any obligation under the Note unsecured by any interest in the subject property."

¶ 12 When interpreting a statute, our goal "is to give effect to the legislature's intent." *State v. Harker,* 2010 UT 56, ¶ 12, 240 P.3d 780 (internal quotation marks omitted).

To discern legislative intent, we look first to the statute's plain language. Also, when interpreting statutes, [w]e presume that the legislature used each word advisedly and read each term according to its ordinary and accepted meaning. Additionally, [w]e read the plain language of [a] statute as a whole and interpret its provisions in harmony with other statutes in the same chapter and related chapters. Furthermore, if the plain meaning of the statute can be discerned from its language, no other interpretive tools are needed.

*Id.* (alterations in original) (internal quotation marks and footnotes omitted).[6]

---

5.  CPA argues that its "underlying principle" is a factual assertion, rather than a legal assertion. *See infra* ¶ 17. For reasons discussed in this opinion, we determine not only that CPA's securitization arguments are legal assertions, but that

under the facts and circumstances of this case, they are incorrect legal assertions.

6.  To the extent we could have resolved the matters on appeal without addressing CPA's statuto-

¶ 13 Here, we believe the plain meaning of the statute is clear. The statute simply states, "The transfer of any debt secured by a trust deed shall operate as a transfer of the security therefor." Utah Code Ann. § 57–1–35 (2010). The plain language of this statute simply describes the long-applied principle in our jurisprudence that when a debt is transferred, the underlying security continues to secure the debt. *See Carpenter v. Longan,* 83 U.S. 271, 275, 16 Wall. 271, 21 L.Ed. 313 (1872) ("The transfer of the note carries with it the security, without any formal assignment or delivery, or even mention of the latter."). Otherwise, separation of a debt from its security undermines the efficacy of the debt instrument, *see* Restatement (Third) of Prop.: Mortgages § 5.4 cmt. a (1997). *See also Best Fertilizers of Ariz., Inc. v. Burns,* 117 Ariz. 178, 571 P.2d 675, 676 (App.1977) ("The note is the cow and the mortgage the tail. The cow can survive without a tail, but the tail cannot survive without the cow."), *rev'd on other grounds,* 116 Ariz. 492, 570 P.2d 179 (1977). Essentially, an unsecured note is "economically wasteful and confers an unwarranted windfall on the mortgagor." *See* Restatement (Third) of Prop.: Mortgages § 5.4 cmt. a. A windfall for the mortgagor is a result that is contrary to the plain meaning of the statute and that does not coincide with the context of Chapter 1 of Title 57, which explains the foundational nuts and bolts of conveyancing, *see* Utah Code Ann. §§ 57–1–1 to –46. Because "[o]ur clear preference is the reading [of the statute] that reflects sound public policy, as we presume that must be what the legislature intended," *State v. Redd,* 1999 UT 108, ¶ 12, 992 P.2d 986, we interpret section 57–1–35 as ensuring the basic presumption that "[a] transfer of an obligation secured by a mortgage also transfers the mortgage unless the parties to the transfer agree otherwise," *see* Restatement (Third) of Prop.: Mortgages § 5.4. The plain language of the statute does nothing to prevent MERS from acting as nominee for Lender and Lender's successors and assigns when it is permitted by the Deed of Trust. Therefore, contrary to CPA's liberal citation of section 57–1–35, we do not interpret the statute as preventing, implying, or somehow indicating that the original parties to the Note and Deed of Trust cannot validly contract at the outset "to have someone other than the beneficial owner of the debt act on behalf of that owner to enforce rights granted in [the security instrument]," *see Marty v. Mortgage Elec. Registration Sys.,* No. 1:10–CV–00033–CW, 2010 WL 4117196, at *5 (D.Utah Oct. 19, 2010) (mem.); *see also id.* at *6 ("Nothing in law or logic supports that such a delegation would constitute a separation of the rights under the trust deed from the ownership of the note, even accepting Plaintiff's interpretation of Utah Code Ann. § 57–1–35.").

¶ 14 Here, Home Buyer agreed to the terms of the Note that identified Citi as the servicing entity, and to the terms of the Deed of Trust that stated "[t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times." Additionally, the Deed of Trust explicitly gave MERS the right to foreclose on behalf of "Lender and Lender's successors and assigns." The statute does not prohibit parties from contracting for these arrange-

ry arguments, we nonetheless believe it is important to take this opportunity to interpret Utah Code section 57–1–35 because of the proliferation of nearly identical cases in the United States District Court for the District of Utah relying on this Utah statute. *Cf. In re S.A.,* 2001 UT App 308, ¶ 19, 37 P.3d 1172 ("[A]lthough this court, as a general rule, does not issue advisory opinions, we may address the construction of a statute that is frequently applied by the trial courts."). *See generally Commonwealth Prop. Advocates v. Mortgage Elec. Registration Sys., Inc.,* No. 2:11–CV–214–TS, 2011 WL 1897826, at *2 (D.Utah May 18, 2011) (mem.) (explaining that "the Court has seen a glut of ... cases flood its docket" in which the plaintiff argues that securi-

tization strips MERS of its rights under the trust deed); *Scarborough v. LaSalle Bank,* No. 2:10–CV–0624–CW, 2011 WL 1549432, at *3 n. 5 (D.Utah Apr. 21, 2011) (mem.) (calling plaintiff's interpretation of Utah Code section 57–1–35 "dubious"); *West v. Mortgage Elec. Registration Sys., Inc.,* No. 2:10–CV–1047, 2011 WL 1321404 (D.Utah Apr. 6, 2011) (mem.); *Commonwealth Prop. Advocates v. CitiMortgage, Inc.,* No. 2:10–CV–00885–CW, 2011 WL 98491 (D.Utah Jan. 12, 2011) (mem.), *reconsideration denied,* 2011 WL 675422 (D.Utah Feb. 16, 2011); *Marty v. Mortgage Elec. Registration Sys.,* No. 1:10–CV–00033–CW, 2010 WL 4117196 (D.Utah Oct. 19, 2010) (mem.).

ments, and nowhere in the documents themselves is MERS explicitly prohibited from then assigning its beneficial interest under the Note to Citi.[7] Therefore, we reject CPA's assertion that Utah Code section 57–1–35 prohibits the original parties to the Note and Deed of Trust from agreeing "to have someone other than the beneficial owner of the debt act on behalf of that owner [and its successors and assigns] to enforce rights granted in a trust deed," *see id.*

## II. Conversion of the Motion

¶ 15 Next, CPA argues that the district court erred by converting the motion to dismiss into a motion for summary judgment. "In order to justify reversal the appellant must show error that was substantial and prejudicial in the sense there is at least a reasonable likelihood that in the absence of the error the result would have been different." *Ortega v. Thomas*, 14 Utah 2d 296, 383 P.2d 406, 408 (1963). Because we believe CPA's case would have been dismissed with prejudice regardless of whether the district court converted the motion, we will proceed directly into the "reasonable likelihood" analysis and assume, without deciding, that the district court did err in converting the motion.

¶ 16 "In reviewing a dismissal pursuant to Utah Rule of Civil Procedure 12(b)(6), we assume that the factual allegations in the complaint are true and we draw all reasonable inferences in the light most favorable to the plaintiff." *Berneau v. Martino*, 2009 UT 87, ¶ 3, 223 P.3d 1128 (internal quotation marks omitted). "[M]ere conclusory allegations in a pleading, unsupported by a recitation of relevant surrounding facts, are

insufficient to preclude dismissal or summary judgment." *Chapman ex rel. Chapman v. Primary Children's Hosp.*, 784 P.2d 1181, 1186 (Utah 1989); *accord Marty*, 2010 WL 4117196, at *2 ("The court need not, however, consider allegations which are conclusory, or that do not allege the factual basis for the claim." (internal quotation marks omitted)). Moreover, "[b]ecause these are legal conclusions rather than pleaded facts, we need not accept them as true." *Osguthorpe v. Wolf Mountain Resorts, L.C.*, 2010 UT 29, ¶ 11, 232 P.3d 999; *accord Marty*, 2010 WL 4117196, at *2 ("[T]he court is not bound by a complaint's legal conclusions, deductions, and opinions couched as facts." (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007))). The propriety of a district court's decision on a motion to dismiss is a question of law, which we review for correctness. *See Saint Benedict's Dev. Co. v. Saint Benedict's Hosp.*, 811 P.2d 194, 196 (Utah 1991).

¶ 17 In arguing that the conversion of the motion to one for summary judgment was fatal to its case in a way a motion to dismiss would not be, CPA argues that its assertions regarding the role of securitization in this matter are factual allegations, rather than legal conclusions, deductions, or opinions. *See Marty*, 2010 WL 4117196, at *2. If that were so, the general rule that factual allegations in the complaint are presumed true for purposes of ruling on a motion to dismiss, *see Berneau*, 2009 UT 87, ¶ 3, 223 P.3d 1128, would control and the motion to dismiss would likely have to be denied. However, as we stated previously, we agree with the district court's determination that

---

7. In its reply brief, CPA obliquely argues that Lender's sale of the Note to Fannie Mae, and the Note's subsequent securitization, terminated any authority granted to MERS by the trust deed terms absent "some further agreement signed by the investors," as is required by the statute of frauds. CPA describes the trust deed provision as an "agreement for services not to be performed within one year [and] a transfer of an interest in realty, including the trustee's powers under a deed of trust." CPA argues that "agreement[s] subject to the statute of frauds cannot be assigned or assumed, except by a writing." CPA describes this statute of frauds concern as one of many potential issues that could arise upon secu-

ritization in general, and has not outright alleged that this is what has happened here. The inference, however, is that this concern is one of many that CPA would have researched during discovery had the case not been dismissed by the district court. Nonetheless, even assuming this argument had merit, we decline to address it because CPA raises it for the first time in its reply brief. *See Allen v. Friel*, 2008 UT 56, ¶ 8, 194 P.3d 903 ("It is well settled that issues raised by an appellant in the reply brief that were not presented in the opening brief are considered waived and will not be considered by the appellate court." (internal quotation marks omitted)).

CPA's "underlying principle"—that MERS and Citi lost their rights under the Deed of Trust when the Note was securitized—is a not a factual allegation, but a statement of law, and an incorrect one at that, *see supra* ¶ 10. For that reason, we do not believe the district court's ruling would have been any different had it ruled on the original motion to dismiss because the district court need not take as true the non-factual statements pleaded in a complaint, *see Osguthorpe,* 2010 UT 29, ¶ 11, 232 P.3d 999. Thus, assuming without deciding that the conversion of the motion to dismiss to one for summary judgment was improper, it nonetheless constituted a harmless error. *See generally Jones v. Cyprus Plateau Mining Corp.,* 944 P.2d 357, 360 (Utah 1997) ("Harmless errors are those that are sufficiently inconsequential so no reasonable likelihood exists that the error affected the outcome of the proceedings."); *Ortega,* 383 P.2d at 408.

## CONCLUSION

¶ 18 CPA's "underlying principle" that securitization nullified MERS's and Citi's rights as expressly set forth in the Deed of Trust is an incorrect legal assertion. Thus, even if the district court had not converted Defendants' motion to dismiss into a motion for summary judgment, its ruling on the motion to dismiss would have produced the same result-a dismissal of CPA's case. In other words, any presumed error in converting the motion was harmless. Therefore, we affirm the district court's order dismissing CPA's complaint.

¶ 19 I CONCUR: CAROLYN B. McHUGH, Associate Presiding Judge.

¶ 20 I CONCUR IN THE RESULT: J. FREDERIC VOROS JR., Judge.