**2015 UT App 231**

## THE UTAH COURT OF APPEALS

CAPRI SUNSHINE, LLC,
Plaintiff and Appellant,
*v.*
E & C FOX INVESTMENTS, LLC,
Defendant and Appellee.

Opinion
No. 20140523-CA
Filed September 11, 2015

Third District Court, Salt Lake Department
The Honorable Robert P. Faust
No. 130903293

James K. Tracy, Stacy J. McNeill, and James C.
Dunkelberger, Attorneys for Appellant

R. Willis Orton and Analise Q. Wilson, Attorneys
for Appellee

JUDGE KATE A. TOOMEY authored this Opinion, in which JUDGES
J. FREDERIC VOROS JR. and MICHELE M. CHRISTIANSEN concurred.

TOOMEY, Judge:

¶1      Capri Sunshine, LLC (Capri) appeals the district court's
decision granting E & C Fox Investments, LLC's (Fox
Investments) motion to dismiss Capri's complaint for failure to
state a claim upon which relief can be granted. Capri argues that
Fox Investments prevented it from paying off a foreclosed debt
when Fox Investments purportedly inflated the payoff amount
and then bought the property at auction for more than the
amount due. We affirm the district court's dismissal.

BACKGROUND

¶2     "In reviewing the trial court's decision, we accept the factual allegations in the complaint as true and interpret those facts and all inferences drawn from them in light most favorable to the plaintiff as the non-moving party." *Oakwood Vill. LLC v. Albertsons, Inc.*, 2004 UT 101, ¶ 9, 104 P.3d 1226. We therefore recite the facts in accordance with the factual allegations in Capri's complaint.

¶3     Between 2007 and 2009, Scott Logan Gollaher and Sharon Western Gollaher took out five large loans to construct The Rail Event Center, a concert venue in Salt Lake City, Utah. Four separate trust deeds secured repayment of the loans. The first, and highest priority, trust deed was for a $975,000 loan from Granite Federal Credit Union (Granite). The second trust deed was for a $500,000 loan, also from Granite. The third trust deed secured two loans from Vernon D. Smith totaling approximately $2,347,000. The final trust deed was for a $1,000,000 loan from Ernest Fox.

¶4     In 2010, the Gollahers defaulted on the Granite loans, and Granite recorded a notice of default and intent to sell the property. Fox Investments, an affiliate of Mr. Fox, purchased the two Granite trust deeds, including the promissory obligations secured by those deeds. Fox Investments then filed notice of default and its intent to sell the property at public auction. Although Fox Investments' notice of sale listed the time of sale as 9:00 a.m. on January 10, 2011, the sale was not conducted until 9:45 a.m., without proper postponement. After the January 2011 sale, in which Mr. Fox was the highest bidder, Mr. Fox's trustee conveyed title of the property to Fox Investments and took possession of the property.

¶5     Mr. Smith filed a lawsuit asking the court to set aside the sale based on Mr. Fox's trustee's failure to properly postpone the time of the sale. But before the lawsuit was resolved, Mr. Smith's trustee held its own trustee's sale in which Mr. Smith was the

highest bidder. On February 15, 2012, a trustee deed was executed purportedly conveying ownership of the property to Mr. Smith.[1]

¶6     In April 2013, the district court set aside Fox Investments' January 2011 sale, noting that "there were defects in the notice of the foreclosure sale and that such did have a 'chilling' effect, at the very least, to Mr. Smith's bid." Mr. Smith then recorded the February 2012 deed and conveyed title of the property via quitclaim deed to Capri. Capri quickly served Fox Investments a fifteen-day notice to vacate the property. But Fox Investments refused, claiming Mr. Smith's foreclosure sale was invalid.

¶7     On May 1, 2013, the district court entered its final order setting aside the January 2011 sale. Fox Investments again gave notice of its intent to foreclose on its first trust deed and sell the property at public auction. Capri requested a payoff amount for Fox Investments' first and second trust deeds. In accordance with the requirements enumerated in Utah Code section 57-1-31.5, Fox Investments gave Capri a payoff calculation of approximately $1,500,000 for the first deed and $650,000 for the second. In response, Capri hired a forensic loan auditor to determine the accuracy of the amounts. The auditor's report concluded that Fox Investments' payoff amounts had been overstated and inaccurate after finding that late fees were improperly incorporated into the payoff amounts, that interest on the loans and attorney fees were miscalculated, and that certain benefits were not properly considered.

¶8     On May 15, 2013, Capri moved the court to issue a temporary restraining order and preliminary injunction to stop Fox Investments from proceeding with its trustee's sale, which the district court denied the same day. Fox Investments held a

---

1. This is the date Capri claims Mr. Smith became the rightful owner.

trustee's sale on May 17, 2013. Capri bid $1,000,000, but Fox Investments countered with a $1,600,000 credit bid and won.

¶9      Capri filed another lawsuit asserting claims for declaratory judgment, injunctive relief, accounting, waste, and unlawful detainer.[2] In response, Fox Investments filed a counterclaim for quiet title to the property and moved to dismiss Capri's complaint, claiming that Capri lacked standing to assert its claims and otherwise failed to state claims upon which relief could be granted. The district court granted Fox Investments' motion and dismissed Capri's claims with prejudice.[3] Capri appeals.

ISSUES AND STANDARDS OF REVIEW

¶10      On appeal, Capri raises several issues challenging the district court's order granting Fox Investments' rule 12(b)(6) motion. First, Capri challenges the court's dismissal of its declaratory judgment claims, which asked the district court to determine that Fox Investments' payoff statement and bid violated Utah law. Second, it argues the court erred in dismissing its claims for accounting, waste, and unlawful

---

2. In its complaint, Capri renewed its request for a preliminary injunction to stop Fox from conducting its sale. Capri conceded before the district court that this request was moot. On appeal, it again argues the court erred in denying injunctive relief. This issue is still moot. "An issue is moot when resolution of it cannot affect the rights of the parties." *Cox v. Cox*, 2012 UT App 225, ¶ 21, 285 P.3d 791. Even if Capri demonstrated some error in the court's decision not to enjoin Fox's sale, this court cannot stop the sale after it has occurred.

3. The court also issued an order granting relief on Fox Investments' counterclaim and its request to release a lis pendens filed by Capri.

detainer. Finally, Capri argues the court erred when it dismissed Capri's complaint with prejudice.

¶11    "A trial court's decision granting a rule 12(b)(6) motion to dismiss a complaint for lack of a remedy is a question of law that we review for correctness, giving no deference to the trial court's ruling." *Oakwood Vill. LLC v. Albertsons, Inc.*, 2004 UT 101, ¶ 9, 104 P.3d 1226. "In reviewing the dismissal, we must keep in mind that the purpose of a rule 12(b)(6) motion is to challenge the formal sufficiency of the claim for relief, not to establish the facts or resolve the merits of a case." *Whipple v. American Fork Irrigation Co.*, 910 P.2d 1218, 1220 (Utah 1996). Thus, we note that "dismissal is justified only when the allegations of the complaint clearly demonstrate that the plaintiff does not have a claim." *Id.*

ANALYSIS

¶12    Capri first challenges the district court's decision to dismiss its declaratory judgment claims seeking to set aside Fox Investments' trustee's sale as a matter of law for failure to comply with Utah Code sections 57-1-28, -31, and -31.5. Capri contends that Fox Investments' inaccurate payoff amount deprived it of the opportunity to cure the default under section 57-1-31. And, although it concedes that Fox Investments' payoff statement did not technically violate section 57-1-31.5, Capri argues the statement was nevertheless "substantively and fundamentally flawed because it grossly overstate[d] the amount actually due." We disagree.

¶13    To determine the sufficiency of Capri's complaint, we must first examine the applicable law. Section 57-1-31 allows any person with a subordinate lien on the trust property to cure an existing default in the performance of any obligation secured by the trust deed. In particular, it allows the subordinate lienholder to "pay to the beneficiary . . . the entire amount then due under the terms of the trust deed (including costs and expenses actually incurred in enforcing the terms of the obligation, or trust

deed, and the trustee's and attorney's fees actually incurred)" "at any time within three months of the filing for record of notice of default under the trust deed." Utah Code Ann. § 57-1-31(1) (LexisNexis 2010). Upon request, the trustee must provide a detailed listing of the costs and fees required to pay off the defaulted loan. *See id.* § 57-1-31.5(2)(a)–(b), (3). If the default is not cured, the trustee can sell the property at public auction to the highest bidder. *See id.* §§ 57-1-27, -28.

¶14 Although it has provided ample authority supporting its right to redeem the property, Capri has not provided any legal authority or reasoned analysis supporting the proposition that Fox Investments' inflated payoff amount violates the duties prescribed under either statute. *See State v. Thomas*, 961 P.2d 299, 304–05 (Utah 1998) (explaining that the Utah Rules of Appellate Procedure require "development of [legal] authority and reasoned analysis based on that authority"); *see also* Utah R. App. P. 24(a)(9). Moreover, Capri does not point to any allegations in its complaint that suggest Fox Investments actually refused payment or otherwise denied Capri the opportunity to cure the default. Instead, Capri suggests Fox Investments' purportedly inflated payoff amount prevented it from curing the default. Without reasoned analysis or supportive legal authority, this argument fails to demonstrate how the facts alleged in Capri's complaint, if proven, support a claim that entitles it to relief. *See Thomas*, 961 P.2d at 305 (explaining that this court will not take on the burden of argument or research if the appellant fails to develop applicable authority); *see also Whipple*, 910 P.2d at 1221–22 (providing that a rule 12(b)(6) dismissal is appropriate where "it is clear that plaintiff is not entitled to relief under any facts that could be proved" (citation and internal quotation marks omitted)).

¶15 Furthermore, Capri fails to demonstrate that the facts as alleged show it performed the obligations necessary to redeem the property. Under Utah law, to exercise the right to cure a default, Capri needed to "pay to the beneficiary . . . the entire amount then due under the terms of the trust deed (including

costs and expenses actually incurred in enforcing the terms of the obligation, or trust deed, and the trustee's and attorney's fees actually incurred)." Utah Code Ann. § 57-1-31(1). Generally, "[a]n unconditional tender of performance in full by a [junior interest holder], even if rejected by the mortgagee, if kept good has the effect of performance." Restatement (Third) of Property: Mortgages § 6.4(g) (1997). But simply indicating a willingness to pay without tendering payment is insufficient for performance. *Cf. Washington Nat'l Ins. Co. v. Sherwood Assocs.*, 795 P.2d 665, 670 (Utah Ct. App. 1990) ("Informing an obligee that you are ready and willing to perform the contract is insufficient." (citing *Century 21 All W. Real Estate & Inv., Inc. v. Webb*, 645 P.2d 52, 55–56 (Utah 1982); *Fischer v. Johnson*, 525 P.2d 45, 47 (Utah 1974))). In other words, Capri needed to allege that it made a bona fide offer to pay the amount due on the lien or that tender was excused. *Cf. Jenkins v. Equipment Ctr., Inc.*, 869 P.2d 1000, 1002–03 (Utah Ct. App. 1994) (holding that tender of the amount of a lien is required before a party can maintain a conversion claim). But beyond asserting it was "ready, able, and willing to pay off both" of Fox Investments' trust deeds, nothing in the complaint suggests Capri actually offered or tendered payment to cure the default—even for the amount it believed to be accurate.

¶16    Capri also argues that Fox Investments "exceeded its right provided under Section 57-1-28" by bidding higher than the purported payoff amount at the sale. In particular, it argues section 57-1-28 allows Fox Investments "to bid only the *actual* balance of the [first trust deed] plus the associated fees and expenses." We disagree.

¶17    Capri's argument quotes the statute out of context and suggests that Utah Code section 57-1-28(1)(b) prohibits a beneficiary from bidding more than the unpaid principal owed and other associated fees and expenses at a trustee's sale. But this statute merely restricts the amount of credit that may be applied to the beneficiaries' bid; it does not restrict the amount the beneficiary may bid at auction. Utah Code Ann. § 57-1-28(1)(b) (LexisNexis 2010). It provides that "[t]he beneficiary

shall receive a credit on the beneficiary's bid in an amount not to exceed" the combined amount of the "unpaid principal owed," accrued interest, taxes, insurance, maintenance, the beneficiary's lien, and the "costs of sale, including reasonable trustee's and attorney's fees." *Id.* Moreover, "[s]enior trust deed holders or lienholders may combine their interests to bid for the property at a trustee's sale, but only by following the statutory mandate that [the purchaser must pay the price bid]." *Randall v. Valley Title*, 681 P.2d 219, 222 (Utah 1984) (citing an earlier, but substantially similar, version of Utah Code section 57-1-28(1)(a)). Allowing a credit bid at auction by no means alters the character of the transaction or relieves Fox Investments from its obligation to pay, but merely offers the convenience of avoiding the "'useless ceremony' of payment to the [trustee] by the very party which is entitled to receive the proceeds of the sale." *Jackson v. Halls*, 2013 UT App 254, ¶ 8, 314 P.3d 1065 (citation omitted). Furthermore, "junior interests are protected by the requirement that the trustee distribute any surplus proceeds to the person legally entitled thereto." *Randall*, 681 P.2d at 221–22. Nothing in Capri's argument demonstrates that Fox Investments' bid exceeded the amount prescribed by statute or that Fox Investments did not pay its bid according to the statute's requirements. *See* Utah Code Ann. § 57-1-28.

¶18   Accordingly, Capri fails to demonstrate that the facts, if proven, show Fox Investments violated Utah Code sections 57-1-31 and -31.5, and Capri has not demonstrated that a remedy for any such violation would include setting aside the trustee's sale. Moreover, it has not demonstrated an error in the bidding that occurred at the trustee's sale. We therefore conclude that the district court did not err in dismissing Capri's declaratory judgment claims.

¶19   Second, Capri asserts Fox Investments "had the role of a mortgagee-in-possession" with a duty to collect rents, and as such Capri "is entitled to a full accounting of the rents that Fox Investments could have, should have, or did receive during its occupation . . . [and to] the extent that Fox [Investments] has

failed to make productive use of the [property], it is liable for waste." Furthermore, Capri, somewhat contradictorily, argues "Fox Investments was a mortgagee in unlawful possession." We disagree and conclude that Capri has failed to meet its burden of persuasion on appeal.

¶20    Each of these arguments depends on Capri's ownership in the property or successful redemption of the property. *See Osguthorpe v. Wolf Mountain Resorts, LC*, 2010 UT 29, ¶¶ 22–24, 232 P.3d 999 (determining that Utah's unlawful detainer statute provides a mechanism for resolving conflicts over lawful possession of property between landowners and tenants); 54A Am. Jur. 2d *Mortgages* § 186 (2009) ("The duty to account arises upon redemption . . . . or foreclosure sale . . . ."); 54A Am. Jur. 2d *Mortgages* § 182 ("[T]he mortgagee may pursue a remedy for waste against the mortgagor where the mortgagor, without the mortgagee's consent, retains possession of rents to which the mortgagee has the right of possession . . . ."). But whether Capri owned the property is a legal question—the answer turns on whether Mr. Smith's foreclosure and sale of the property were proper considering his trustee's sale occurred after a prior trustee's sale effectively extinguished Mr. Smith's interests in the property. Because we are reviewing a dismissal on the pleadings, we assume as correct the facts that Mr. Smith's trustee conducted a trustee's sale of the property from which he purportedly conveyed ownership of the property to Capri, but we do not similarly assume as correct the legal conclusion that Capri had ownership in the property. *Cf. Bush v. Bush*, 184 P. 823, 825–26 (Utah 1919) (in the absence of pleadings concerning the right of possession, Utah courts will not indulge in presuming the right of possession from the asserted fact of ownership); *Capital Assets Fin. Servs. v. Lindsay*, 956 P.2d 1090, 1094 (Utah Ct. App. 1998) (determining the ownership of a property represents a legal conclusion the parties are not qualified to make), *aff'd sub nom. Capital Assets Fin. Servs. v. Maxwell*, 2000 UT 9, 994 P.2d 201.

¶21    We conclude that Capri has failed to support a necessary element of its claims—ownership or the right to possession—

with reasoned analysis or legal authority. Accordingly, Capri has failed to carry its burden of persuasion on appeal.

¶22 Rule 24 of the Utah Rules of Appellate Procedure requires the appellant's brief to set forth "the contentions and reasons of the appellant with respect to the issues presented . . . with citations to the authorities, statutes, and parts of the record relied on." Utah R. App. P. 24(a)(9). While failure to cite the pertinent authority may not always render an issue inadequately briefed, it does so "when the overall analysis of the issue is so lacking as to shift the burden of research and argument to the reviewing court." *State v. Thomas*, 961 P.2d 299, 305 (Utah 1998).

¶23 Here, Capri has done nothing in its brief or complaint to demonstrate how the facts it alleges, if proven, support its right to possess the property. Capri's legal arguments assume that it is the legal owner of the property during the relevant period. Yet Capri does not challenge the legal correctness of the court's determination that Fox Investments was the owner of the property until May 1, 2013. Rather, it advances conclusory arguments for accounting, waste, and unlawful detainer with only an implication of its right to own or possess the property. Accordingly, we conclude the district court did not err in dismissing the accounting, waste, and unlawful detainer claims, because Capri has failed to persuade us otherwise.

¶24 Finally, Capri argues that even if we conclude the complaint was "deficient on any of the foregoing claims, dismissal *with prejudice* was nevertheless unwarranted" because the facts of the case could have supported other claims for relief not presented in the complaint. It argues the court erred in not allowing it to amend its complaint and asserts that on remand it will "plead trespass and injunctive relief to bar Fox Investments' unlawful possession" of the property.

¶25 "Dismissal with prejudice . . . is a harsh and permanent remedy when it precludes a presentation of plaintiff's claims on their merits." *Bonneville Tower Condo. Mgmt. Comm. v. Thompson*

*Michie Assocs., Inc.*, 728 P.2d 1017, 1020 (Utah 1986) (per curiam). Dismissal with prejudice should, therefore, be used with caution. That said, although the district court dismissed these claims early in the proceedings, it resolved them on their merits after deeming them lacking. The court even reviewed the alleged facts under different possible theories that would potentially entitle Capri to relief and determined the arguments would still fail. Capri has not demonstrated the court erred in its analysis of the issues. Moreover, Capri has made no effort to show that its claims would succeed if amended, or that claims for trespass or injunctive relief would succeed if the facts in the complaint were proven. Accordingly, we conclude the district court did not err in dismissing Capri's claims with prejudice.

## CONCLUSION

¶26    The district court did not err when it dismissed Capri's complaint, because Capri failed to demonstrate that the facts in the pleadings, if proven, would support a claim upon which relief can be granted. Capri has also failed to demonstrate that Fox Investments violated Utah Code sections 57-1-28, -31, and -31.5 or to demonstrate that a violation of those statutes would support setting Fox Investments' trustee's sale aside. Because Capri has done nothing to support its assertion that it had a right to possess the property, it has also failed to demonstrate how the alleged facts support claims for accounting, waste, and unlawful detainer. Finally, the court did not err in dismissing Capri's claims with prejudice, because it decided Capri's claims on their merits and Capri has not demonstrated how amended pleadings would support a claim upon which relief can be granted. We therefore affirm the district court's dismissal of Capri's causes of action and we award costs on appeal to Fox Investments.

———————