**2016 UT App 212**

## THE UTAH COURT OF APPEALS

MICHAEL J. VAN LEEUWEN,
Appellant,
*v.*
BANK OF AMERICA NA,
Appellee.

Memorandum Decision
No. 20150610-CA
Filed October 27, 2016

Third District Court, Salt Lake Department
The Honorable Laura S. Scott
No. 150902048

Michael J. Van Leeuwen, Appellant Pro Se

Chandler P. Thompson and Jason T. Baker,
Attorneys for Appellee

JUDGE STEPHEN L. ROTH authored this Memorandum Decision, in
which JUDGES J. FREDERIC VOROS JR. and DAVID N. MORTENSEN
concurred.

ROTH, Judge:

¶1      Michael J. Van Leeuwen appeals the district court's
dismissal of his complaint under rule 12(b)(6) of the Utah Rules
of Civil Procedure. We reverse the district court's dismissal
order and remand for further proceedings.

BACKGROUND[1]

¶2     In December 2005, Van Leeuwen executed a deed of trust on certain real property (the Property) securing a promissory note for a loan he had received from Intermountain Mortgage Company Inc. (Intermountain). The trust deed named Mortgage Electronic Registration Systems Inc. (MERS), the nominee of Intermountain, as "the beneficiary under this Security Instrument." The trust deed further indicated that "MERS holds only legal title to the interests granted by [Van Leeuwen] . . . but, if necessary to comply with law or custom, MERS . . . has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property."

¶3     In an effort to halt foreclosure after failing to make payments on the loan, Van Leeuwen filed a complaint in July 2010 (the 2010 Complaint), asserting claims against several defendants, including Intermountain, MERS, and BAC Home Loans Servicing (BAC), but not Bank of America NA (the Bank). Van Leeuwen's theory was that "[w]hen the 'beneficial interest' in the trust deed(s) securing the promissory note(s) executed by the lender and [Van Leeuwen] [was] assigned to MERS, the note(s) were split from the trust deed(s), rendering the mortgage(s) unenforceable." He claimed this was so because, even though MERS was listed as the beneficiary under his trust deed, its ownership of the mortgage was "purely fictional" because MERS did not own "legal title to the mortgage," was "never entitled to receive [his] monthly payments . . . [or] the proceeds of a foreclosure or deed of trust sale," and otherwise

---

1. "In reviewing the [district] court's decision, we accept the factual allegations in the complaint as true and interpret those facts and all inferences drawn from them in [the] light most favorable to . . . the non-moving party." *Capri Sunshine, LLC v. E & C Fox Invs., LLC*, 2015 UT App 231, ¶ 2, 366 P.3d 1214 (citation and internal quotation marks omitted).

"ha[d] no actual financial interest in any mortgage loan." Instead, he alleged that MERS was merely paid by finance companies "to record an assignment to MERS with the local county recorder" so that "all further assignments of the loan do not have to be recorded." He argued that, as a result, MERS and its successors and assignees did not have standing or legal authority to foreclose on the Property. Accordingly, he sought a declaratory judgment that MERS and the other defendants lacked standing to foreclose on the Property. He also sought relief from the foreclosure process, including a judgment quieting title to the Property in his favor.[2] The case was removed

---

2. Van Leeuwen described his 2010 Complaint as being "solely about MERS," arguing that "MERS lacked standing to bring foreclosure actions." Van Leeuwen is not the first plaintiff to challenge MERS' standing to foreclose. Indeed, in the past decade, plaintiffs have repeatedly challenged MERS' authority to, among other things, initiate foreclosure proceedings and sell a property even though MERS had been declared the beneficiary of the trust deed. Plaintiffs in such actions typically argue that MERS lost its interest and rights under the trust deed when "the underlying note was securitized." *See, e.g.*, *West v. Mortgage Elec. Registration Sys., Inc.*, No. 2:10–CV–1047, 2011 WL 1321404, at *2 (D. Utah Apr. 6, 2011); *Commonwealth Prop. Advocates, LLC v. Mortgage Elec. Registration Sys., Inc.*, 2011 UT App 232, ¶¶ 7–14, 263 P.3d 397. Notably, the arguments made in these cases against MERS' authority to foreclose on that basis have been routinely dismissed for failure to state a claim under state and federal versions of rule 12(b)(6) in both federal and state courts. *See, e.g.*, *Commonwealth Prop. Advocates, LLC v. Mortgage Elec. Registration Sys., Inc.*, No. 2:10–CV–340, 2010 WL 3743643, at *3 (D. Utah Sept. 20, 2010); *Burnett v. Mortgage Elec. Registration Sys., Inc.*, No. 1:09–CV–00069, 2009 WL 3582294, at *3–6 (D. Utah Oct. 27, 2009); *Mitchell v. ReconTrust Co. NA*, 2016 UT App 88, ¶¶ 16–23, 373 P.3d 189; *see also Commonwealth Prop. Advocates*, 2011 UT App

(continued…)

to the United States District Court for the District of Utah, which dismissed the complaint with prejudice on May 9, 2011. In its memorandum decision and order, the district court stated that it was dismissing the case because each of the causes of action in the 2010 Complaint "have been repeatedly rejected by this Court and rely upon meritless misinterpretations of case law and Utah statutes," and it found "no meaningful distinction between [the 2010 Complaint] and the numerous [similar] actions the Court ha[d] previously dismissed." The court entered final judgment against Van Leeuwen shortly thereafter.

¶4      In March 2015, Van Leeuwen filed the complaint in this case (the 2015 Complaint).[3] The 2015 Complaint named the Bank as a defendant and made claims regarding the same property at issue in the 2010 Complaint. In the 2015 Complaint, Van Leeuwen sought a declaratory judgment regarding the Bank's "ownership status" in relation to his loan. He asserted that, although it claimed that it owned his loan, the Bank was merely the servicer. He based this assertion on a Fair Debt Collection Practices Act compliance letter he received in February 2011 from the Bank (the Letter) stating specifically that it was the servicer—and not the creditor/owner—of his loan. The Letter informed Van Leeuwen that loan servicing responsibilities, formerly exercised by BAC, had been transferred to the Bank effective July 1, 2011. In particular, the Letter stated,

---

(…continued)
232, ¶¶ 7–14 (affirming dismissal of the same claims under summary judgment).

3. Van Leeuwen also filed a complaint in July 2014 in which he asserted, as he does in the present case, that the Bank does not own his "loan, note, or otherwise" and that he does not owe the Bank any money. However, in January 2015, he voluntarily dismissed all of his claims against the Bank without prejudice.

> The name of the creditor to whom the debt is owed: BANA CWB CIG HFI 1ST LIENS. *Please note unless Bank of America, N.A., is listed . . . as the creditor of your loan, Bank of America, N.A., does not own your loan and only services your loan on behalf of your creditor, subject to the requirements and guidelines of your creditor.*

(Emphasis in original.) Accordingly, Van Leeuwen sought a declaratory judgment that because the Bank contended it owned his loan and he believed, based on the Letter, that it did not, "an actual judicial controversy exists . . . such that the Court's declaration of the parties' status and rights with respect to" his loan was necessary. He also sought injunctive relief to prohibit the Bank from foreclosing on the Property, alleging that if he was not granted a preliminary and permanent injunction, "there is a substantial risk that [the Bank] will attempt to irreparably injure [him] by attempting to foreclose on the alleged Deed of Trust."

¶5   In response, the Bank filed a motion to dismiss under rule 12(b)(6) of the Utah Rules of Civil Procedure, asserting that Van Leeuwen's claims were "barred by res judicata and fail[ed] on the merits." The district court granted the Bank's motion, stating without further analysis that it "agree[d] with [the Bank] that the instant law suit is barred by the doctrine of res judicata as the claims in the instant action have all been fully litigated, and all requirements for res judicata have been met." Van Leeuwen filed a motion to reconsider, which the district court denied. Van Leeuwen appeals.

ISSUE AND STANDARDS OF REVIEW

¶6   Van Leeuwen contends that the district court dismissed his case in error. We review a district court's decision to grant a rule 12(b)(6) motion to dismiss a complaint "for correctness,

giving no deference to the [district] court's ruling." *Capri Sunshine, LLC v. E & C Fox Invs., LLC*, 2015 UT App 231, ¶ 11, 366 P.3d 1214 (citation and internal quotation marks omitted). "[T]he purpose of a rule 12(b)(6) motion is to challenge the formal sufficiency of the claim for relief, not to establish the facts or resolve the merits of a case," and accordingly, "dismissal is justified only when the allegations of the complaint clearly demonstrate that the plaintiff does not have a claim." *Id.* (citation and internal quotation marks omitted). In addition, whether res judicata "bars an action" is a question of law that we review for correctness. *Mack v. Division of Securities*, 2009 UT 47, ¶ 26, 221 P.3d 194 (citation internal quotation marks omitted).

ANALYSIS

¶7 Two distinct branches comprise the doctrine of res judicata: claim preclusion and issue preclusion. *Macris & Assocs., Inc. v. Neways, Inc.*, 2000 UT 93, ¶ 19, 16 P.3d 1214. "[C]laim preclusion corresponds to causes of action[;] issue preclusion corresponds to the facts and issues underlying the causes of action." *Mack*, 2009 UT 47, ¶ 29 (alterations in original) (citation and internal quotation marks omitted). "[B]oth branches of res judicata serve[] the important policy of preventing previously litigated issues from being relitigated." *Macris*, 2000 UT 93, ¶ 19 (second alteration in original) (citation and internal quotation marks omitted).

¶8 The Bank prevailed below based on its assertion that the dismissal of the 2010 Complaint precluded relitigation of the claims asserted in the 2015 Complaint. For claim preclusion to apply, three requirements must be satisfied:

> First, both cases must involve the same parties or their privies. Second, the claim that is alleged to be barred must have been presented in the first suit or must be one that could and should have been

> raised in the first action. Third, the first suit must
> have resulted in a final judgment on the merits.

*Id.* ¶ 20 (citation and internal quotation marks omitted). "All three elements must be present for claim preclusion to apply." *Id.*

¶9 The Utah Supreme Court has "fully embrace[d] the Restatement's transactional test" for analyzing whether the claims in two cases are the same under the second requirement of the claim preclusion branch of res judicata. *Gillmor v. Family Link, LLC*, 2012 UT 38, ¶ 13, 284 P.3d 622 (citing Restatement (Second) of Judgments § 24 (Am. Law Inst. 1982)). "Under the transactional test, the claims are the same if they arise from the same operative facts, or in other words from the same transaction." *Id.* ¶ 12 (citation and internal quotation marks omitted). There are "a variety of considerations" in the transactional test because, "[r]ather than resting on the specific legal theory invoked, [claim preclusion] generally is thought to turn on the essential similarity of the underlying events giving rise to the various legal claims." *Id.* ¶ 13 (alterations in original) (citation and internal quotation marks omitted). These considerations include "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding and usage." *Id.* ¶ 14 (citing Restatement (Second) of Judgments § 24(2)). "[N]o single factor is determinative." *Id.* (citing Restatement (Second) of Judgments § 24 cmt. b). And even in the event that "the current claims were factually available at the time of the prior suit[], [a plaintiff is] not required to bring them [if] they do not arise from the same common nucleus of operative facts." *Id.* ¶ 23. In such a case, "res judicata does not bar [the plaintiff's] claims." *Id.*

¶10 To apply the transactional test, we must analyze the operative facts of the two complaints. In his 2010 Complaint, as

discussed above, Van Leeuwen sought to prevent foreclosure on the Property by arguing that MERS and its successors and assignees "lack[ed] standing to prosecute the foreclosure." MERS lacked standing, he alleged, because it was an "entity unknown to traditional mortgage law that serves no role in the lending process," as it does not own legal title to the mortgage. Accordingly, he sought, among other things, a declaration that MERS and its successors and assignees "lack[] standing to bring foreclosure actions"; a judgment that MERS and "any servicer or trustee acting on MERS' behalf" violated the Fair Debt Collection Practices Act by "foreclosing on [his] home without the legal authority to do so"; an order that the defendants "produce the 'blue-ink' note verifying and validating both the identity of the creditor and the amount due on the mortgage loan obligation"; a judgment "releasing the trust deeds and quieting title to the property in favor of [Van Leeuwen]" on the basis that "[n]o named defendant has any valid interest in the trust deeds and/or the notes and/or the Property"; "declaratory and/or injunctive relief to remedy the harm to [him], and to other Utah homeowners, caused by MERS' actions"; and reformation of his "mortgage contract by ordering a reduction in the principal and an affordable fixed interest rate for the life of the loan."

¶11    In his 2015 Complaint, by comparison, Van Leeuwen sought an order declaring who owned his loan after the 2011 change of his loan servicer—specifically, a declaration that the Bank was merely the servicer of his loan, not its creditor/owner. In particular, he alleged that the Bank had recently claimed that it was the creditor/owner of his debt but that the Letter stated that it was the servicer only and not the owner of the loan. Based on the Letter, Van Leeuwen alleged that, although the Bank "contends that it owned the purported Debt Instruments at the time [Van Leeuwen] received the Letter," the Bank did not. He also disputed "that there [was] any money owing under the purported Debt Instruments" and alleged that even if there was money owing, "the debt would not be owed to or owned by [the

Bank]," who had apparently demanded payment. Accordingly, he requested declaratory relief from the court regarding "the parties' status and rights with respect to the Debt Instruments." He also requested injunctive relief, alleging that "there is a substantial risk that [the Bank] will attempt to irreparably injure [him] by attempting to foreclose on the alleged Deed of Trust unless they are preliminarily and permanently enjoined."

¶12   Although the parties dispute whether the privity and finality requirements have been met,[4] we are not persuaded that the claims litigated in the 2010 Complaint are sufficiently similar to those presented in the 2015 Complaint or that the loan ownership claim could have and should have been brought in 2010. Certainly the fact that the two complaints concern the same property and the same loan, apparently in the process of foreclosure at the point of each filing, does not mean that the substance of the claims in the two complaints is necessarily the same. And on appeal, Van Leeuwen's arguments are sufficient to support his point that the substance of the claims he raised in his 2015 Complaint was not presented in the 2010 Complaint because the 2010 Complaint concerned *MERS'* authority to foreclose, while the claims in the 2015 Complaint concern the *Bank's* authority to foreclose—a question that he contends did not arise until he received the Letter in 2011. In response, just as it did below, the Bank fails to compare the actual allegations of the two complaints and explain why, given the circumstances in this case, the district court's decision—which contained no

_____

4. Because all the requirements for claim preclusion must be met for the res judicata doctrine to apply and we resolve this case on the claim similarity requirement, we do not address the parties' privity and finality arguments. In any event, both requirements seem to require a fact-intensive inquiry better suited for development and resolution in the district court.

independent analysis, but simply referenced the Bank's arguments in support of the motion to dismiss—was correct.

¶13   Further, we are not persuaded that Van Leeuwen "could and should have . . . raised" the 2015 Complaint claims in the 2010 Complaint. *See Gillmor*, 2012 UT 38, ¶ 10 (citation and internal quotation marks omitted). While it does not seem entirely sufficient to argue that the claims in the 2015 Complaint could not have been brought in the 2010 Complaint simply because certain events occurred after 2010, *see id.* ¶¶ 14–21 (explaining that the transactional test considers whether a claim is barred by res judicata given the variety of circumstances present in a particular case and that "'no single factor is determinative'" (quoting Restatement (Second) of Judgments § 24 cmt. b (Am. Law Inst. 1982))), that is not the sole premise of Van Leeuwen's argument. Rather, he asserts that in 2010 he could not have known that the Bank, as a post-2010 successor to BAC, would assume a substantively different, nonownership relationship to the loan at some point in the future. *See id.* ¶ 10 (noting that for claim preclusion to apply, the claim must either "have been presented in the first suit or be one that could and should have been raised in the first action" (citation and internal quotation marks omitted)). And importantly, the 2010 Complaint does not identify a loan servicer at all; it certainly does not allege that the loan is serviced by any entity separate from the note holder and beneficiary of the trust deed, as Van Leeuwen alleges in the 2015 Complaint. As a consequence, on the record before the court, it is premature to conclude that Van Leeuwen's present claims—based on the legal implications of the separation between loan owner and loan servicer—"could and should have been raised" in connection with the 2010 Complaint, as the Bank claims. *See id.* (citation and internal quotation marks omitted).

¶14   To be sure, the legal implications of having the Bank declared a servicer as opposed to a creditor/owner are less than clear. The Bank suggests, for example, that because Utah is a

nonjudicial foreclosure state, "the foreclosing party [is not required to] produce the original note or other evidence of standing in order to foreclose." (Citing Utah Code Ann. §§ 57-1-19 et seq. (LexisNexis 2010).) The Bank further asserts that in Utah, a party may be able to enforce an instrument even if he or she is not the owner of it. (Citing Utah Code Ann. §§ 70A-3-201, 70A-3-203, 70A-3-205, and 70A-3-301 (Lexis Nexis 2009).) While that may be the case, the district court did not address these issues in its order, and it is not clear to us at this point in the litigation whether these concepts are pertinent enough to be decisive. That said, we do not suggest by this decision that Van Leeuwen's 2015 Complaint may not be dismissed on the basis of res judicata or any other basis under rule 12(b)(6) as the case develops further. Instead, we merely decide that Van Leeuwen has presented a reasonable argument that, as the case now stands, res judicata does not bar the 2015 Complaint, a proposition that the Bank's arguments do not adequately refute.

¶15    Accordingly, because it is not clear that the claims in the 2015 Complaint "have been presented" in the 2010 Complaint or that they "could and should have been raised" in that action, *Macris & Assocs., Inc. v. Neways, Inc.*, 2000 UT 93, ¶ 20, 16 P.3d 1214 (citation and internal quotation marks omitted), we reverse the dismissal of Van Leeuwen's complaint and remand the case for further proceedings.

CONCLUSION

¶16    For the reasons discussed above, we reverse the district court's dismissal order and remand the case for further proceedings.

———————