2016 UT App 88

## THE UTAH COURT OF APPEALS

PAULA A. MITCHELL AND WADE MITCHELL,
Appellants,
*v.*
RECONTRUST COMPANY NA, THE BANK OF NEW YORK MELLON,
ARMAND J. HOWELL, AMERICA'S WHOLESALE LENDER, AND BAC
HOME LOANS SERVICING LP,
Appellees.

Opinion
No. 20140113-CA
Filed April 28, 2016

Third District Court, West Jordan Department
The Honorable Barry G. Lawrence
No. 110400816

Douglas R. Short, Attorney for Appellants

Chandler P. Thompson and Robert H. Scott,
Attorneys for Appellees ReconTrust Company NA,
The Bank of New York Mellon, America's Wholesale
Lender, and BAC Home Loans Servicing LP

Armand J. Howell, Appellee Pro Se

SENIOR JUDGE RUSSELL W. BENCH authored this Opinion, in which
JUDGE MICHELE M. CHRISTIANSEN concurred.[1] JUDGE J. FREDERIC
VOROS JR. concurred, with opinion.

BENCH, Senior Judge:

¶1     Paula A. Mitchell and Wade Mitchell appeal from the
district court's orders dismissing several of their claims and
granting summary judgment on their remaining claims in favor

---

1. Senior Judge Russell W. Bench sat by special assignment as
authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

of ReconTrust Company NA, the Bank of New York Mellon (BNYM), America's Wholesale Lender (AWL), BAC Home Loans Servicing LP (BAC), and Armand J. Howell. We affirm.


BACKGROUND

¶2     Paula Mitchell obtained a $1 million loan from AWL in 2006. To secure this loan, she executed a trust deed in favor of AWL on real property in Salt Lake County. The trust deed defined AWL as "Lender" and designated Stewart Matheson as the trustee. The trust deed provided that Mortgage Electronic Registration Systems Inc. (MERS) "is acting solely as nominee for Lender and Lender's successors and assigns" and "is the beneficiary under this Security Instrument." The trust deed also indicated that Paula Mitchell

> agree[d] that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property.

¶3     On August 17, 2010, MERS recorded a document assigning its beneficial interest under the trust deed to BNYM. That same day, BNYM recorded a substitution of trustee in which BNYM, as the current beneficiary, appointed ReconTrust as successor trustee under the trust deed. Also on that day, ReconTrust filed a notice of default and intent to sell the property. According to the notice, Paula Mitchell had defaulted on her loan obligation by failing to make payments since May 2010.

¶4     Attempting to prevent foreclosure, Paula and Wade Mitchell filed a complaint in January 2011 against ReconTrust,

BNYM, AWL, and BAC (collectively, Bank Defendants). The Mitchells also named Howell as a defendant, alleging that he was an attorney who "traditionally conducts foreclosure sales for ReconTrust and is expected to conduct the sale [of the Mitchells' property] unlawfully."[2] The Mitchells raised claims generally based on a theory that MERS, which was referred to as the nominee of the lender and the beneficiary under the terms of the trust deed, lacked authority to appoint BNYM as the successor beneficiary and that BNYM thus lacked authority to appoint ReconTrust as the successor trustee. The Mitchells also alleged that ReconTrust was not authorized to serve as a trustee under Utah's statutes. Further, they alleged that BAC, which was servicing the loan and was purportedly acting as an agent of BNYM, "directed [the Mitchells] to default in order to be able to seek a modification because that would be the only way to obtain a loan modification." Because they purportedly defaulted at BAC's suggestion, the Mitchells alleged that the defendants were estopped from enforcing the trust deed and note.

¶5    In terms of relief, the Mitchells sought declaratory judgments clarifying the respective rights under the trust deed and note, invalidating the substitution of trustee and notice of default, declaring the debt unsecured and that the defendants may not foreclose the trust deed, and declaring that the debt had been satisfied via insurance or credit default swaps. The

---

2. Howell is mentioned only three more times in the complaint. In the claim for punitive damages, the Mitchells alleged that "Howell knows of the legal deficiencies in ReconTrust's efforts to act as a foreclosing trustee, and that ReconTrust is not qualified under the statute to serve as a foreclosing trustee, and yet he turns a blind eye to such defects and knowingly conducts unlawful sales for them." They also alleged that Howell and the other defendants "colluded in their nationwide practices" and claimed that punitive damages were necessary to "dissuade Mr. Howell from continuing to conduct unlawful sales for ReconTrust."

Mitchells also sought a permanent injunction of any foreclosure sale conducted by ReconTrust on behalf of BNYM, an order quieting title to the subject property in their names, an award of punitive damages, and an award of attorney fees incurred in defending against an improper foreclosure.

¶6      Bank Defendants moved to dismiss, arguing that the Mitchells failed to state any claims upon which relief could be granted. In support of their motion, Bank Defendants indicated that on October 6, 2011, ReconTrust had recorded a cancellation of notice of default, thereby mooting the Mitchells' claims challenging ReconTrust's authority to act as a trustee with power of sale because ReconTrust would not be conducting any further foreclosure proceedings on the Mitchells' property.

¶7      The district court granted the motion to dismiss in part and dismissed nine of the Mitchells' eleven claims. The court first determined that under the terms of the trust deed, "MERS was the statutory beneficiary and, by contract, the agent of the Lender and the Lender's successors." The court explained that "MERS assigned its interest to BNYM and [BNYM] is now, under the terms of the [trust deed] and the statute, the beneficiary." The court then addressed each cause of action. Regarding the Mitchells' first cause of action seeking a declaration with respect to the true ownership of the debt, "and by extension the authority of [the] defendants to foreclose," the district court concluded that it stated "no genuine claim for declaratory relief" because "MERS had, and BNYM has, authority to commence foreclosure under the terms of the [trust deed] and the Utah statutes." Because the tenth cause of action was "a restatement of the [f]irst," the court dismissed the tenth cause of action for the same reasons.

¶8      The court proceeded to dismiss the second and seventh causes of action, which challenged the notice of default and alleged a breach of duty by the trustee, as moot in light of the cancellation of the notice of default. As for the fourth cause of action, based on a theory that the ownership of the debt had

been severed from the trust deed, the court dismissed it because "[n]o fact is alleged suggesting that the [trust deed] has been severed from the underlying obligation, nor is there any allegation how, under Utah law, this might occur." The court also dismissed the fifth cause of action, stating that "the claim fails to allege any basis for concluding that payment by a third party to the holder of the debt satisfies" the Mitchells' obligations under the note and trust deed. The court dismissed the sixth cause of action for quiet title. It reasoned that BNYM was the beneficiary and that any securitization of the debt "does not change the [trust deed's] terms . . . making BNYM now the agent (nominee) for the current owner or owners of the debt." Moreover, the Mitchells did not dispute that their title was subject to the trust deed. Last, the court dismissed the eighth cause of action for an injunction and the eleventh cause of action for punitive damages because both were remedies rather than stand-alone claims.

¶9    The district court denied Bank Defendants' motion to dismiss with respect to two causes of action. Specifically, the court concluded that the third cause of action, which appeared to be based on theories of estoppel and breach of the implied covenant of good faith and fair dealing, possibly stated a claim because "actions by the Lender or its agents encouraging [the Mitchells] to default may constitute a modification of the underlying agreement, a waiver of one or more of its terms, or act to estop the current lender from asserting certain contractual terms." The court also determined that the ninth cause of action survived the motion to dismiss because it sought attorney fees related to a breach of contract and therefore "if [the Mitchells'] estoppel[] theory establishes that the contract was modified by [BAC's] conduct, a breach of contract may be proven." Accordingly, the district court allowed the Mitchells to proceed on their third and ninth causes of action.

¶10    Bank Defendants later moved for summary judgment on the remaining two claims. The court granted this motion. It reasoned that all possible legal theories for the third cause of

action relied upon "the alleged misrepresentation that occurred in March 2010 regarding a possible loan modification." The court then concluded that the evidence showed, "[at] most," that the Mitchells had a "subjective understanding that they had been assured that a loan modification would occur." Thus, it was "undisputed that there was never an agreement to modify according to any certain terms, and there was certainly nothing in writing." Given this undisputed fact, and noting that the third cause of action was "unclear as to precisely its legal theory or the relief sought," the court determined that "there can be no claim that [BAC] is bound by a modified loan agreement as a matter of law" and that a waiver claim likewise would fail. Similarly, the court concluded that a claim for breach of the covenant of good faith and fair dealing would fail because "there can be no implied duty arising" under a nonexistent modification and "no such duty can be implied out of the [Mitchells'] existing loan." The court also concluded that any claim grounded in promissory estoppel failed because, inter alia, the Mitchells could not reasonably rely on such an indefinite promise and because the record did not support actual reliance. Consequently, the court dismissed the third cause of action. Because the ninth cause of action depended on the success of the third cause of action, the court dismissed the ninth cause of action as well. Then, upon Bank Defendants' motion, the district court determined that the Mitchells had failed to comply with discovery orders and dismissed the complaint as a discovery sanction; the sanction served as a separate and independent basis for dismissing the Mitchells' claims.

¶11    After these orders were entered, Howell, who had not joined Bank Defendants' motions, moved for summary judgment. The district court granted Howell's motion, stating that "the reasoning of [the rulings with regard to Bank Defendants] applies with equal force to Howell and compels a similar result." The court emphasized that the Mitchells had "not pointed to an independent cause of action against Howell that was not addressed in the prior rulings." The court further explained that "the Complaint alleges that Howell was merely

acting on behalf of ReconTrust and is devoid of any allegations that Howell engaged in conduct that would somehow create liability separate from the other Defendants." Accordingly, the court granted summary judgment to Howell and thereby disposed of all of the Mitchells' claims. The Mitchells appeal.[3]

ISSUES AND STANDARDS OF REVIEW

¶12    The Mitchells contend that the district court erred in dismissing nine of their claims. "A district court's ruling on . . . a motion to dismiss . . . is a legal question which we review for correctness." *Commonwealth Prop. Advocates, LLC v. Mortgage Elec. Registration Sys., Inc.*, 2011 UT App 232, ¶ 6, 263 P.3d 397.

¶13    The Mitchells next challenge a number of the district court's rulings relating to evidence presented in connection with summary judgment. In particular, they contend that the district court erred in its rulings on motions to strike several affidavits. They also contend that the district court erred in refusing to take judicial notice of declarations from witnesses in a separate action. "We review a district court's decision on a motion to strike affidavits submitted in support of or in opposition to a motion for summary judgment for an abuse of discretion." *Portfolio Recovery Assocs., LLC v. Migliore*, 2013 UT App 255, ¶ 4,

---

3. The Mitchells moved this court for permission to file over-length briefs. Although we granted their motion to file an over-length opening brief, we denied their motion to file an over-length reply brief. The Mitchells nevertheless included, as they explain, the "full reply brief they would have filed by attaching [it] in the addendum" to their reply brief. This attachment constitutes "a blatant attempt to skirt" this court's order and the page limitations stated in rule 24(f) of the Utah Rules of Appellate Procedure. *See Aspenwood, LLC v. C.A.T., LLC*, 2003 UT App 28, ¶ 46, 73 P.3d 947. Consequently, we have not considered this addendum.

314 P.3d 1069. Likewise, "[w]e review the [district] court's judicial notice of prior adjudicated facts under Rule 201 of the Utah Rules of Evidence for abuse of discretion." *In re J.B.*, 2002 UT App 267, ¶ 14, 53 P.3d 958.

¶14   The Mitchells contend that the district court erred in rendering summary judgment against them on their remaining two claims. We review the district court's decision for correctness.[4] *Commonwealth Prop. Advocates*, 2011 UT App 232, ¶ 6.

¶15   Finally, the Mitchells contend that they are entitled to attorney fees. "Whether attorney fees are recoverable is a question of law . . . ." *R.T. Nielson Co. v. Cook*, 2002 UT 11, ¶ 16, 40 P.3d 1119.


ANALYSIS

I. Claims Dismissed Under Rule 12(b)(6)

¶16   On appeal, the Mitchells challenge the dismissal of several claims. Rule 12(b)(6) of the Utah Rules of Civil Procedure allows a defendant to move to dismiss an action that the defendant believes "fail[s] to state a claim upon which relief can be granted." Utah R. Civ. P. 12(b)(6). "[A] rule 12(b)(6) motion to dismiss admits the facts alleged in the [complaint] but challenges the [plaintiff's] right to relief based on those facts." *Maese v.*

---

4. The Mitchells also contend that the district court erred in dismissing their claims as a discovery sanction. After determining that the Mitchells had failed to comply with discovery orders, the district court dismissed the complaint as a discovery sanction but stated that this rationale served as an alternative ground for dismissing the complaint. Because we affirm the district court's dismissal of the Mitchells' claims on the merits, *see infra* ¶¶ 56, 60, we do not reach the alternative basis for its decision.

*Davis County*, 2012 UT App 48, ¶ 3, 273 P.3d 949 (citation and internal quotation marks omitted). Thus, a district court should grant a motion to dismiss when, "assuming the truth of the allegations in the complaint and drawing all reasonable inferences therefrom in the light most favorable to the plaintiff, it is clear that the plaintiff is not entitled to relief." *Hudgens v. Prosper, Inc.*, 2010 UT 68, ¶ 14, 243 P.3d 1275 (citation and internal quotation marks omitted). In evaluating a motion to dismiss, the district court may "consider documents that are referred to in the complaint and [are] central to the plaintiff's claim" and may also "take judicial notice of public records." *BMBT, LLC v. Miller*, 2014 UT App 64, ¶ 6, 322 P.3d 1172 (alteration in original) (citations and internal quotation marks omitted). Our review of the district court's dismissal orders requires us to "accept the plaintiff's description of facts alleged in the complaint to be true, but we need not accept extrinsic facts not pleaded[,] nor need we accept legal conclusions in contradiction of the pleaded facts." *Reynolds v. Woodall*, 2012 UT App 206, ¶ 10, 285 P.3d 7 (citation and internal quotation marks omitted).

¶17 We will address the Mitchells' causes of action by category based upon the district court's rationale for dismissal. Thus, we consider the district court's dismissal orders relying on its conclusions that Bank Defendants had authority to commence foreclosure proceedings, that the cancellation of ReconTrust's notice of default mooted several claims, that the trust deed had not been severed from the debt, that the debt had not been satisfied, that the Mitchells were not entitled to quiet title, and that punitive damages were not appropriate.

A.    The Authority to Appoint a Successor Trustee and the Authority to Foreclose

¶18 The Mitchells challenge the dismissal of their first and tenth causes of action. The first cause of action sought clarification of the "true ownership of the [d]ebt" and "by extension the authority of [the] defendants to foreclose upon the

Property." It alleged that because MERS and its assignee BNYM lacked any beneficial ownership interest in the debt, MERS and BNYM could not foreclose on the property. The tenth cause of action similarly sought to block a non-judicial foreclosure on the ground that MERS did not have "any beneficial interest in the Property or the Trust Deed that could even possibly be assigned to BNYM." The district court deemed the tenth cause of action to be a "restatement" of the first. Then, after taking judicial notice of the trust deed and the promissory note, the court ruled that both causes of action failed because "MERS had, and BNYM has, authority to commence foreclosure under the terms of the [trust deed]."

¶19 The Mitchells argue that MERS and its assignee BNYM lacked the authority to appoint ReconTrust as the successor trustee for the purpose of foreclosing on the property. In support, they contend that "[o]nly a statutorily defined 'Beneficiary' may initiate the non-judicial foreclosure of the trust deed." The Mitchells further contend that MERS did not meet the statutory definition of a "beneficiary" and that BNYM, as MERS's assignee, therefore could not validly appoint ReconTrust as successor trustee. Bank Defendants counter that MERS and its assignee had the authority to foreclose and appoint a successor trustee under the terms of the trust deed itself. We agree with Bank Defendants.

¶20 Utah Code section 57-1-19(1) defines a "beneficiary" under a trust deed as "the person named or otherwise designated in a trust deed as the person for whose benefit a trust deed is given, or his successor in interest." Utah Code Ann. § 57-1-19(1) (LexisNexis 2010). However, even if the Mitchells are correct that MERS does not meet this definition,[5] the terms of

---

5. The district court ruled that MERS was a statutory beneficiary as defined by section 57-1-19(1). The district court reasoned that the statute defines "beneficiary" as "'the person named or otherwise designated in a trust deed as the person for whose

(continued…)

the trust deed nevertheless gave MERS the authority to appoint a successor trustee and foreclose on the property.

¶21 Case law from this court and the Tenth Circuit Court of Appeals indicates that a trust deed's plain language may give MERS, as "nominee for Lender and Lender's successors and assigns," the authority to appoint a successor trustee. Specifically, this court has previously suggested that at least one of the statutes governing conveyances does not "imply[] . . . or somehow indicat[e] that the original parties to the Note and Deed of Trust cannot validly contract at the outset 'to have someone other than the beneficial owner of the debt act on behalf of that owner to enforce rights granted in [the security instrument].'" *Commonwealth Prop. Advocates, LLC v. Mortgage Elec. Registration Sys., Inc.*, 2011 UT App 232, ¶ 13, 263 P.3d 397 (third alteration in original) (quoting *Marty v. Mortgage Elec.*

---

(…continued)

benefit a trust deed is given, or his successor in interest'"; that MERS was named in the trust deed as the beneficiary; and that MERS's status as nominee of the Lender was thus of no consequence under the statutory definition. (Quoting Utah Code Ann. § 57-1-19.) The United States Court of Appeals for the Tenth Circuit reached a different conclusion on a similar question in *Burnett v. Mortgage Electronic Registration Systems, Inc.*, 706 F.3d 1231 (10th Cir. 2013). On analogous facts, it apparently concluded that MERS could not be "the person named or otherwise designated in a trust deed as the person for whose benefit a trust deed is given," because MERS held "no ownership right in the note." *Id.* at 1237. Based on *Burnett*, Bank Defendants concede that the district court apparently erred. We express no opinion on this point. But we agree with the district court and the Tenth Circuit in *Burnett* that the statute is not dispositive where, as here, the trust deed expressly grants MERS the right to foreclose and sell the property and thus, by implication, the right to appoint a successor trustee for that purpose. *Id.*

*Registration Sys.*, No. 1:10-cv-00033-CW, 2010 WL 4117196, at *5 (D. Utah Oct. 19, 2010)). In other words, "[t]he plain language of [a conveyancing] statute does nothing to prevent MERS from acting as nominee for Lender and Lender's successors and assigns when permitted by the Deed of Trust." *Id.* Similarly, the Tenth Circuit has noted that even when "MERS is not a beneficiary as that term is defined in [Utah Code section] 57-1-19(1)[,] . . . MERS nonetheless [may have the] authority to appoint [a successor trustee] and foreclose on [a] property" under the plain language of the trust deed. *See Burnett v. Mortgage Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1237 (10th Cir. 2013).

¶22    Consistent with this case law, we conclude that the terms of the trust deed in this case explicitly gave MERS the right to appoint a successor trustee regardless of whether MERS satisfied the statutory definition of a beneficiary. The trust deed explained with respect to substituting the trustee that "Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder." But the trust deed also stated,

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

Because the trust deed granted MERS, as nominee for Lender and its assigns, the right "to exercise any or all of those interests" "granted by Borrower in this Security Interest" and the right "to take any action required of Lender," the trust deed allowed MERS to remove the trustee and appoint a successor trustee on

Lender's behalf. It also gave MERS the "right to foreclose and sell the Property." *See, e.g.*, *Sincere v. BAC Home Loans Servicing, LP*, No. 3:11-cv-00038, 2011 WL 6888671, at *5 (W.D. Va. Dec. 30, 2011) (construing a similar trust deed and concluding that "the plain terms of the deed of trust supplied MERS with the authority to take any action required of the lender, including foreclosing and selling the property in the event of a default as well as appointing substitute trustees to do the same," and noting that the borrower's signature on the trust deed "indicates that he agreed MERS had the authority to take any action required of the lender"); *Ramirez-Alvarez v. Aurora Loan Servs., LLC*, No. 01:09cv1306, 2010 WL 2934473, at *3 (E.D. Va. July 21, 2010) (interpreting similar language in a trust deed to mean that the borrower "agreed that MERS, filling the dual roles of beneficiary and nominee for the lender, had the right to foreclose on the property and take any action required of the lender, such as the appointment of substitute trustees"). Thus, we conclude that the trust deed's terms, to which Paula Mitchell agreed, provide MERS and its assignee BNYM the authority to appoint a successor trustee. Consequently, BNYM could validly appoint ReconTrust as successor trustee in accordance with the trust deed's plain language.

¶23 The Mitchells' challenge to the dismissal of their first and tenth causes of action depends upon their assertion that MERS and its assignee BNYM lacked authority to foreclose. But as we have concluded, the plain terms of the trust deed authorized MERS, as Lender's nominee, "to foreclose and sell the Property." Accordingly, the district court did not err in dismissing the Mitchells' first and tenth causes of action.

B. The Claims Dismissed as Moot

¶24 The Mitchells argue that the district court erred in dismissing the second and seventh causes of action as moot, asserting that "the questions of what duties ReconTrust had, and still has, to the Mitchells remain unanswered." The second cause

of action challenged ReconTrust's qualifications as successor trustee and its actions, including its notice of default. The seventh cause of action alleged that ReconTrust breached its duties as successor trustee by initiating a non-judicial foreclosure sale without authority to do so. Thus, both causes of action challenged ReconTrust's power as successor trustee to carry out a non-judicial foreclosure sale. The district court determined that these two claims were moot by virtue of the fact that ReconTrust withdrew its notice of default and represented to the court that it would not be conducting any further foreclosure proceedings on the Mitchells' property.

¶25    "If the requested judicial relief cannot affect the rights of the litigants, the case is moot and a court will normally refrain from adjudicating it on the merits." *Merhish v. H.A. Folsom & Assocs.*, 646 P.2d 731, 732 (Utah 1982) (citation and internal quotation marks omitted). "Once a controversy has become moot, a trial court should enter an order of dismissal." *Id.* at 733.

¶26    The Mitchells acknowledge that ReconTrust withdrew the notice of default but nevertheless argue that these causes of action are not moot, because ReconTrust lacks the statutory authority to conduct a non-judicial foreclosure sale. We first note that this argument is contrary to their statement before the district court that they voluntarily agreed to dismiss "their present request for a declaratory judgment that ReconTrust lacks the statutory authority to conduct non-judicial foreclosure sales in Utah." In any event, the cancellation of the notice of default and BNYM's continuing freedom to appoint a qualified trustee, *see supra* ¶¶ 22–23, eliminated any dispute regarding whether ReconTrust was authorized to foreclose on the Mitchells' property. Further, because ReconTrust retracted its notice of default and never sold the property, ReconTrust cannot be held liable for breach of any duty based on an unauthorized foreclosure. Because the requested relief in relation to the second and seventh causes of action would not affect the rights of the

parties, the district court properly dismissed these claims as moot.[6]

C.     The Claim That Ownership of the Debt Was Severed from the Trust Deed

¶27     The Mitchells contend that the district court erred in dismissing the fourth cause of action. This cause of action alleged that AWL transferred the ownership interest in the debt to a mortgage-backed security. It further alleged that "fractionalizing the ownership of the Debt by securitization . . . effectively destroy[ed] the security for the Debt."[7] Thus, the Mitchells sought "a judgment declaring that the Debt has . . . become unsecured, and the Trust Deed may not be foreclosed." On appeal, the Mitchells argue that "the Trust Deed has been severed from the Debt . . . rendering the Debt unsecured, and precluding foreclosure."

¶28     The premise underlying this argument and the Mitchells' fourth cause of action was rejected by this court in *Commonwealth Property Advocates, LLC v. Mortgage Electronic Registration System, Inc.*, 2011 UT App 232, 263 P.3d 397. There, a debtor argued that the lender and MERS, as the lender's nominee, "lost their rights under the Deed of Trust when the Note was

---

6. Since this appeal was filed, BNYM recorded a substitution of trustee appointing eTitle Insurance Agency as the successor trustee. Taking judicial notice of this recorded document, *see* Utah R. Evid. 201, we observe that it supports our conclusion that it is no longer relevant whether ReconTrust was properly appointed successor trustee in the first place or whether ReconTrust was qualified under Utah law to act as a trustee.

7. "Securitization" is the "process of pooling loans and selling them to investors on the open market." *Commonwealth Prop. Advocates, LLC v. Mortgage Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1197 n.2 (10th Cir. 2011).

securitized." *Id.* ¶ This court disagreed, explaining that "when a debt is transferred, the underlying security continues to secure the debt." *Id.* ¶ 13 (citing Utah Code Ann. § 57-1-35 (LexisNexis 2010)); *accord Burnett v. Mortgage Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1237–38 (10th Cir. 2013); *Commonwealth Prop. Advocates, LLC v. Mortgage Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1202–05 (10th Cir. 2011) (determining that MERS retained its authority to foreclose even after the debt secured by a Utah trust deed was securitized, and concluding that "[e]ven assuming Plaintiff is correct that securitization deprives Defendants of their implicit power to foreclose as holders of the trust deeds, the trust deeds *explicitly* granted Defendants the authority to foreclose").

¶29 The Mitchells have not persuaded us that their argument is distinguishable from the one precluded by this court's decision in *Commonwealth Property Advocates*. Any securitization of the debt secured by the trust deed did not take away MERS's power to foreclose under the trust deed's terms. *See Commonwealth Prop. Advocates*, 2011 UT App 232, ¶¶ 11–13. As a consequence, we affirm the district court's dismissal of the Mitchells' fourth cause of action.

D. Satisfaction of the Debt

¶30 The Mitchells challenge the dismissal of their fifth cause of action that sought a declaratory judgment regarding the satisfaction of the debt. The Mitchells assert that the debt "has been paid in whole, by means of insurance or some similar instrument [e.g., a credit default swap], such that the true owners of the Debt are no longer owed anything . . . , which extinguishes the Debt and the trust deed."

¶31 The district court dismissed this cause of action on the ground that "the claim fails to allege any basis for concluding that payment by a third party to the holder of the debt satisfies [the Mitchells'] obligations under the Note and [the trust deed]." Beyond offering a conclusory statement, the Mitchells make no effort on appeal to demonstrate error in the district court's

reasoning. *See Simmons Media Group, LLC v. Waykar, LLC*, 2014 UT App 145, ¶ 37, 335 P.3d 885 (indicating that appellants do not meet their burden to demonstrate district court error when they fail to present reasoned analysis based on relevant legal authority). Accordingly, we affirm the dismissal of this claim.

E.     Quiet Title

¶32    The Mitchells contend that the district court prematurely dismissed their sixth cause of action for quiet title. In so arguing, they concede that the property was subject to the trust deed but assert that the district court "never examined, let alone determined, who, if anybody, actually has any valid, enforceable claim against the Property based on the trust deed."

¶33    "A quiet title action 'is a suit brought to quiet an existing title against an adverse or hostile claim of another and the effect of a decree quieting title is not to vest title but rather is to perfect an existing title as against other claimants.'" *Haynes Land & Livestock Co. v. Jacob Family Chalk Creek, LLC*, 2010 UT App 112, ¶ 19, 233 P.3d 529 (quoting *Nolan v. Hoopiiaina* (*In re Malualani B. Hoopiiaina Trust*), 2006 UT 53, ¶ 26, 144 P.3d 1129). "To succeed in an action to quiet title to real estate, a plaintiff must prevail on the strength of his own claim to title and not on the weakness of a defendant's title or even its total lack of title." *Church v. Meadow Springs Ranch Corp.*, 659 P.2d 1045, 1048–49 (Utah 1983).

¶34    We agree with Bank Defendants that, instead of showing the strength of their own claim to title, the Mitchells "only attack the alleged interest of [Bank Defendants] in the property." The district court concluded that the Mitchells' theories attacking Bank Defendants' rights vis-à-vis the trust deed were legally incorrect. In light of this conclusion, and because the Mitchells conceded that their title is subject to the trust deed, the district court dismissed the Mitchells' quiet title action. In other words, the district court did determine that Bank Defendants have a "valid, enforceable claim against the Property based on the trust deed." The Mitchells' effort on appeal falls short of demonstrating error in the district court's analysis. Accordingly,

we affirm the court's decision that the Mitchells did not state a claim that would entitle them to quiet title.

F.    The Punitive Damages Claim

¶35    The Mitchells also challenge the district court's dismissal of their eleventh cause of action seeking punitive damages.[8] On appeal, the Mitchells attempt to recast this cause of action as one for civil conspiracy, stating, "Although admittedly mislabeled as a request for punitive damages, the 11th [cause of action] actually sets forth its own common law claim of civil conspiracy . . . ."

¶36    "[T]o preserve an issue for appeal the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue." *Brookside Mobile Home Park, Ltd. v. Peebles*, 2002 UT 48, ¶ 14, 48 P.3d 968. Issues that are not raised before the district court "are usually deemed waived." *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801.

¶37    The Mitchells have not preserved this argument for appeal. In opposing Bank Defendants' motion to dismiss, the Mitchells did not address their eleventh cause of action. Consequently, they did not present the district court with an opportunity to rule on the same argument they now raise on appeal, namely, that they sufficiently alleged a claim for civil conspiracy. The Mitchells also have not argued that plain error or exceptional circumstances would justify our review of this issue. Because the Mitchells did not preserve their argument challenging the district court's dismissal of their eleventh cause of action, we affirm the district court's decision without reaching its merits.

¶38    In short, the district court did not err in concluding that "MERS had, and BNYM has, authority to commence foreclosure

---

8. The Mitchells do not specifically challenge the dismissal of their eighth cause of action for an injunction. *See supra* ¶ 8.

under the terms of the [trust deed]." Moreover, the Mitchells have not demonstrated that the district court erred in granting Bank Defendants' motion to dismiss all but the third and ninth causes of actions.

## II. Challenges to the Evidence on Summary Judgment

¶39 The Mitchells next challenge three of the district court's rulings relating to evidence presented in connection with summary judgment. Specifically, they assert that the district court erred in denying their motion to strike a bank employee's affidavit, in granting Bank Defendants' motion to strike the Mitchells' affidavits, and in refusing to take judicial notice of declarations made in a separate case. We reject these arguments.

### A. The Court's Refusal to Strike a Bank Employee's Affidavit

¶40 First, the Mitchells assert that the district court improperly refused to strike an affidavit from a bank employee. They argue that the affidavit was inadmissible because it constituted hearsay and was not based on the employee's personal knowledge.

¶41 District courts generally have "broad discretion to decide motions to strike summary judgment affidavits." *Portfolio Recovery Assocs., LLC v. Migliore*, 2013 UT App 255, ¶ 4, 314 P.3d 1069 (citation and internal quotation marks omitted). To obtain reversal, appellants must show not only district court error but also "error that was substantial and prejudicial in the sense that there is at least a reasonable likelihood that in the absence of the error the result would have been different." *Ross v. Epic Eng'g, PC*, 2013 UT App 136, ¶ 12, 307 P.3d 576 (citation and internal quotation marks omitted).

¶42 Here, the district court considered the affidavit at issue as "relevant to the dispute" and "properly before the Court." However, the district court stated that it had "decided the motion for summary judgment without reference to the [bank employee's] Affidavit." Because the bank employee's affidavit

played no role in the district court's decision on summary judgment, the Mitchells cannot show that they were prejudiced by the district court's denial of their motion to strike. Accordingly, we will not reverse the district court on this basis.

## B.    The Court's Striking of the Mitchells' Affidavits

¶43    Second, the Mitchells assert that the district court erred in striking their own affidavits. But as with their challenge to the court's refusal to strike the bank employee's affidavit, the Mitchells cannot show that they were prejudiced by the court's decision to exclude their affidavits. *See id.* The Mitchells have not been harmed, because the court specifically stated that "even considering the affidavits, Defendants would still be entitled to summary judgment." As a result, this argument also does not present reason to reverse the district court.

## C.    The Court's Refusal to Take Judicial Notice of Certain Declarations

¶44    Third, the Mitchells argue that the district court erred in not taking judicial notice of declarations that former employees of Bank of America made in a separate case.[9] According to the Mitchells, the declarations contain admissions that Bank of America "systematically tried to induce homeowners into 'default' in order to force them into foreclosure" and would be offered to "demonstrat[e] that [the Mitchells would] likely be able to present similar evidence at trial."

¶45    Rule 201 of the Utah Rules of Evidence governs judicial notice of adjudicative facts. It provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . is generally known . . . or . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Utah R. Evid. 201(b). The court "may

---

9. Bank of America is the successor-by-merger to BAC.

take judicial notice on its own; or . . . must take judicial notice if a party requests it and the court is supplied with the necessary information." *Id.* R. 201(c).

¶46 The Mitchells have not demonstrated that the district court erred by refusing to take judicial notice of the former employees' declarations. Appellants must support their arguments on appeal with reasoned analysis based on relevant legal authority. *See Simmons Media Group, LLC v. Waykar, LLC*, 2014 UT App 145, ¶ 37, 335 P.3d 885; *see also* Utah R. App. P. 24(a)(9). The Mitchells' argument is limited to a conclusory statement that the district court violated rule 201(d) because the rule "mandates [that] a court shall take judicial notice of uncontroverted facts in situations such as this." However, the Mitchells do not analyze whether the declarations contain "adjudicative facts" and, as in the district court, the Mitchells have not offered any authority that would allow the court to take judicial notice of declarations filed in another action and then to consider the substance of those declarations. Accordingly, this claim of error fails.

### III. Claims Dismissed on Summary Judgment

¶47 Next, the Mitchells challenge the district court's summary judgment against them on their third cause of action.[10] Summary judgment is appropriate if, viewing "the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party," *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (citation and internal quotation marks omitted), "there is no

---

10. Without additional analysis, the Mitchells state that they challenge the district court's order with regard to the ninth cause of action for "breach of contract." The district court dismissed the ninth cause of action because it "depended on the success of the Third Cause of Action." Because we affirm the dismissal of the third cause of action, we do not address the ninth.

genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law," Utah R. Civ. P. 56(a).[11]

### A.    Summary Judgment in Favor of Bank Defendants

¶48    The Mitchells first challenge the merits of the district court's summary judgment in favor of Bank Defendants on the third cause of action. Specifically, the Mitchells contend that the district court erred in granting summary judgment on their third cause of action for "estoppel and breach of good faith and fair dealing," which was based on their assertion that the defendants had caused them to stop making their mortgage payments. At the outset, the district court noted that the third cause of action was "unclear as to precisely its legal theory or the relief sought" but concluded that "all possible legal theories rely on the alleged misrepresentation that occurred in March 2010 regarding a possible loan modification." The court later determined that the third cause of action could not survive summary judgment under a theory of promissory estoppel or a theory of breach of the covenant of good faith and fair dealing. The Mitchells raise arguments on appeal related to both legal theories.

### 1.    Promissory Estoppel

¶49    The Mitchells' arguments related to the theory of promissory estoppel appear directed at one element, namely, that the "plaintiff acted with prudence and in reasonable reliance on a promise made by the defendant." *Youngblood v. Auto-Owners Ins. Co.*, 2007 UT 28, ¶ 16, 158 P.3d 1088 (citation and internal quotation marks omitted). They then argue that the court misallocated the burden on summary judgment. The Mitchells further argue that the district court inappropriately

---

11. Although rule 56 of the Utah Rules of Civil Procedure has been amended since the time the district court granted summary judgment in this case, those changes are not relevant to our analysis.

weighed the evidence against them in concluding that they could not show the existence of a definite and certain promise to support a promissory estoppel claim.

¶50    In particular, the Mitchells contend that the "court never determined whether defendants met their initial burdens" and that the Mitchells "therefore were not even under any obligation to prove any factual dispute." Relying on *Orvis v. Johnson*, 2008 UT 2, 177 P.3d 600, they state that a movant must "'affirmatively provide factual evidence establishing that there is no genuine issue of material fact.'" (Quoting *id.* ¶ 16.) The Mitchells' argument, however, does not account for the fact that they would carry the burden of proof at trial on the third cause of action. The same case cited by the Mitchells clarified that

> [a] summary judgment movant, *on an issue where the nonmoving party will bear the burden of proof at trial*, may satisfy its burden on summary judgment by showing, by reference to "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there is no genuine issue of material fact.

*Orvis*, 2008 UT 2, ¶ 18 (emphasis added) (quoting an earlier version of rule 56 of the Utah Rules of Civil Procedure). "Upon such a showing, whether or not supported by additional affirmative factual evidence, the burden then shifts to the nonmoving party, who 'may not rest upon the mere allegations or denial of the pleadings,' but 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (emphasis omitted) (quoting an earlier version of rule 56).

¶51    Because the Mitchells as the nonmoving party would carry the burden of proof at trial, Bank Defendants, as the moving party, met their burden on summary judgment by showing, by reference to the evidence, "that there [was] no genuine issue of material fact." *Id.* To successfully defend against Bank Defendants' motion, the Mitchells therefore had an

obligation to "'set forth specific facts showing that there [was] a genuine issue for trial.'" *Id.* (quoting an earlier version of rule 56). The Mitchells have not demonstrated that the district court misallocated the parties' burdens on summary judgment.

¶52 Likewise, the Mitchells have not demonstrated that the district court inappropriately weighed the evidence. They assert that the district court weighed the evidence because it did not accept their allegation that BAC instructed them to miss mortgage payments in order to obtain a loan modification. They also focus on the district court's statements that the Mitchells' testimony was "unclear," "less than certain," and "imprecise."

¶53 "Promissory estoppel involves a clear and definite promise . . . ." *Youngblood*, 2007 UT 28, ¶ 19 (citation and internal quotation marks omitted). Thus, a "party claiming estoppel must present evidence showing that an offer or promise was made on which the party based his or her reliance." *Nunley v. Westates Casing Servs., Inc.*, 1999 UT 100, ¶ 36, 989 P.2d 1077. "Likewise, the alleged promise must be reasonably certain and definite, and a claimant's subjective understanding of the promissor's statements cannot, without more, support a promissory estoppel claim." *Id.*

¶54 The district court's decision rested on its conclusion that "there is no evidence supporting a clear promise or representation by [BAC] to unconditionally modify the loan." Instead, the evidence, including the Mitchells' testimony, indicated that BAC told the Mitchells that "once [they] missed two payments, [they] could *apply for* a loan modification." Because the evidence showed that the Mitchells, at most, had a "subjective understanding that they had been assured that a loan modification would occur," the district court determined as a matter of law that the Mitchells "could not reasonably rely on a promise that is so indefinite that it lacks—literally—any terms."

¶55 In this regard, the context of the district court's statements—that the Mitchells were "unclear," "less than certain," and "imprecise"—matters. The court stated that the

Mitchells' testimony on the issue of whether BAC promised them a loan modification was "less than certain," noting that "[Wade] Mitchell testified that someone from [BAC] promised them a loan modification, and so he and his wife 'expected' a loan modification." And it was "unclear from [the Mitchells'] own testimony whether [BAC] actually promised them an unconditional loan modification, or whether it simply agreed to discuss the matter." The court also indicated that the Mitchells' affidavits were "similarly imprecise" because Wade Mitchell testified that "they were only promised the ability to *apply for* a loan modification." Given this context and the court's task of evaluating whether the Mitchells had provided specific facts showing that BAC made a promise on certain terms, we are not convinced that the court improperly weighed the evidence.

¶56   The Mitchells do not identify any evidence that the district court failed to consider or any evidence that unequivocally indicates that BAC, without condition, promised to modify the loan on certain terms. The evidence, even construed in the light most favorable to the Mitchells, does not show that there was a genuine issue of material fact, because any instruction given by BAC to the Mitchells does not meet the legal standard for a definite and certain promise required for a promissory estoppel claim. *See id.* As a consequence, the district court did not err in concluding that no genuine issue of fact existed and that Bank Defendants were entitled to judgment as a matter of law on this theory.

2.     Breach of the Covenant of Good Faith and Fair Dealing

¶57   The Mitchells also challenge the district court's summary judgment decision on the third cause of action on the theory of a breach of the covenant of good faith and fair dealing. They contend that the court misapplied the law and should have concluded that "the allegations show defendants intentionally rendered it difficult if not impossible for [Paula Mitchell] to receive the fruits of her Loan by falsely inducing her into 'defaulting.'" They also make the contrary argument that their

claims "are not based on the existing Loan" but instead are "based on defendants' misconduct impairing the Loan by fraudulently inducing a 'default' in order to profit from it."

¶58 "Under the covenant of good faith and fair dealing, each party impliedly promises that he will not intentionally or purposely do anything which will destroy or injure the other party's right to receive the fruits of the contract." *Iota, LLC v. Davco Mgmt. Co.*, 2012 UT App 218, ¶ 32, 284 P.3d 681 (citation and internal quotation marks omitted). "[O]ne party may not render it difficult or impossible for the other to continue performance and then take advantage of the non-performance he has caused." *Id.* (alteration in original) (citation and internal quotation marks). Some limitations on the covenant of good faith and fair dealing exist:

> the Covenant cannot be used (1) to create new or independent rights or obligations to which the parties have not agreed in the contract; (2) to establish rights or duties inconsistent with the express terms of the contract; or (3) to require a party to exercise an express contractual right in a manner detrimental to its own interests in order to benefit the other party to the contract.

*Cook Assocs., Inc. v. Utah Sch. & Inst. Trust Lands Admin.*, 2010 UT App 284, ¶ 16, 243 P.3d 888 (citing *Oakwood Vill. LLC v. Albertsons, Inc.*, 2004 UT 101, ¶ 45, 104 P.3d 1226). Consistent with these limitations, this court has recognized that "[d]eclining to give up rights granted by a contract does not constitute a breach of the covenant of good faith and fair dealing." *Iota*, 2012 UT App 218, ¶ 33.

¶59 Despite the Mitchells' statement that their claim is "not based on the existing Loan," they do not appear to contend that the implied duty arises out of any separate agreement to modify the loan. Although vague, we understand the substance of the Mitchells' argument to center on an implied duty arising out of

the original loan agreement. The Mitchells theorize that Bank Defendants breached the implied duty of good faith and fair dealing by inducing them to default with the information that the Mitchells could obtain a loan modification only if they first defaulted.

¶60 Considering the evidence in the light most favorable to the Mitchells and thus assuming that Bank Defendants told the Mitchells that they could not even apply for a loan modification unless they defaulted, Bank Defendants did not breach the implied duty of good faith and fair dealing as a matter of law. The information regarding a possible loan modification did not render it impossible for the Mitchells to continue making their mortgage payments. Indeed, according to Wade Mitchell's affidavit, the Mitchells' default was at least in part attributable to the fact that "cash flow was getting tighter." Thus, Bank Defendants' conduct did not impede the Mitchells from performing their obligations under the contract or render it impossible for them to perform. *See id.* ¶¶ 32–33. Furthermore, the district court correctly concluded that "no such duty can be implied out of [the Mitchells'] existing loan as a matter of law," because the Mitchells' position—that Bank Defendants could not foreclose after their missed payments—would require Bank Defendants to forgo rights granted by the original loan agreement. *See id.* ¶ 33. Accordingly, we affirm the district court's dismissal of the Mitchells' third cause of action based on the theory of the covenant of good faith and fair dealing.[12]

---

12. The Mitchells also suggest that the district court should have accepted certain allegations in the complaint as true in its consideration of the third cause of action. However, because the Mitchells have not demonstrated that they preserved this argument, we do not consider it. *See* Utah R. App. P. 24(a)(5) (requiring the appellant's brief to contain "citation to the record showing that the issue was preserved in the trial court" or a basis for addressing an unpreserved issue); *438 Main St. v. Easy*

(continued…)

B.      Summary Judgment in Favor of Howell

¶61    The Mitchells also challenge the district court's order granting summary judgment to Howell, the attorney who on occasion conducted trustee's sales on behalf of ReconTrust. They attack the court's ruling on both procedural and substantive grounds.

¶62    As for their procedural argument, the Mitchells contend that Howell waived the defense of failure to state a claim by not raising it sooner. In support, they rely on rule 12(h) of the Utah Rules of Civil Procedure, which provides, "A party waives all defenses and objections not presented either by motion or by answer or reply . . . ." Utah R. Civ. P. 12(h). "A defense of failure to state a claim, however, falls under a procedural exception . . . ." *Mack v. Utah State Dep't of Commerce*, 2009 UT 47, ¶ 14, 221 P.3d 194 (citing Utah R. Civ. P. 12(h)). The rule specifies that "the defense of failure to state a claim upon which relief can be granted . . . may also be made by a later pleading . . . or by motion for judgment on the pleadings or at the trial on the merits." Utah R. Civ. P. 12(h). Accordingly, a "defense of failure to state a claim . . . may be raised any time before the court or jury determines the validity of a party's claim." *Mack*, 2009 UT 47, ¶ 14 (citing Utah R. Civ. P. 12(h)). Because Howell raised the defense by moving for summary judgment before the court ruled on the merits of the claims against him, the Mitchells have not shown that the district court erred in refusing to strike Howell's motion on the ground that Howell had waived the defense of failure to state a claim.

¶63    Regarding the merits, the Mitchells contend that the district court erred in concluding that "Howell was entitled to [the] same result as [the] co-defendants." The Mitchells

---

(…continued)
*Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 ("Issues that are not raised at trial are usually deemed waived.").

acknowledge the court's determination that they had "not pointed to an independent cause of action against Howell that was not addressed in the prior rulings." Nevertheless, they contend that the court erred because "each 'cause of action' is still a claim against Howell personally."

¶64    The Mitchells have failed to demonstrate that the district court erred in concluding that "the reasoning of [the rulings with regard to Bank Defendants] applies with equal force to Howell and compels a similar result." They also have not addressed the court's rationale that "the Complaint alleges that Howell was merely acting on behalf of ReconTrust and is devoid of any allegations that Howell engaged in conduct that would somehow create liability separate from the other Defendants." Accordingly, we affirm the district court's grant of summary judgment to Howell.

## IV. Attorney Fees

¶65    Finally, the Mitchells contend that they are entitled to attorney fees under a number of legal theories: contract, the private attorney general doctrine, the common fund doctrine, and the court's inherent authority. We conclude that an award of attorney fees is not warranted here.

¶66    "As a general rule, Utah courts award attorney fees only to a prevailing party, and only when such an action is permitted by either statute or contract." *Doctors' Co. v. Drezga*, 2009 UT 60, ¶ 32, 218 P.3d 598. At the appellate level, generally "when a party who received attorney fees below prevails on appeal, the party is also entitled to fees reasonably incurred on appeal." *Robertson's Marine, Inc. v. I4 Sols., Inc.*, 2010 UT App 9, ¶ 8, 223 P.3d 1141 (citation and internal quotation marks omitted).

¶67    The district court did not award any attorney fees to the Mitchells. And on appeal, their request for attorney fees under all theories is contingent upon their success before this court. Because the Mitchells did not receive attorney fees below and

have not prevailed on appeal, we decline to award them attorney fees incurred on appeal. *See id.*

CONCLUSION

¶68   The Mitchells have not demonstrated that the district court erred in dismissing several of their causes of action upon Bank Defendants' motion to dismiss. The Mitchells have also failed to show that the district court erred in its evidentiary rulings or in granting summary judgment to the defendants on their remaining claims. Accordingly, we affirm.

_____

VOROS, Judge (concurring):

¶69   I concur in the majority opinion. Alternatively, I believe this appeal is inadequately briefed.

¶70   For example, perhaps the Mitchells' most sympathetic claim is their claim for equitable estoppel. They assert that Bank Defendants induced them to miss monthly payments on the note and consequently should be estopped from foreclosing on the house based on those missed monthly payments. But the Mitchells' brief fails to cite any relevant legal authority, quote testimony from the record, identify the elements of equitable estoppel, or explain how a reasonable fact-finder could find each of those legal elements. They instead rely on statements such as the following: "It is believed a pattern of deliberate misconduct will come to light through discovery, which misconduct has resulted in thousands of similarly situated borrowers being duped by defendants into 'defaulting,' so that they could hijack their loans for defendants' own hidden profit scheme," and "No one could possibly consider such systematic profiteering from fraudulent statements fair or equitable."

¶71    Similarly, the Mitchells describe at some length what they call their "discovery disputes" in the trial court; the factual background and procedural history of these issues comprise seven pages of their brief. But those seven pages contain no citations to the record on appeal. The briefing of these two points typifies the Mitchells' principal brief.

¶72    An appellant's argument must contain "citations to the authorities, statutes, and parts of the record relied on." Utah R. App. P. 24(a)(9). "An issue is inadequately briefed when the overall analysis of the issue is so lacking as to shift the burden of research and argument to the reviewing court." *State v. Davie*, 2011 UT App 380, ¶ 16, 264 P.3d 770 (citation and internal quotation marks omitted). "An inadequately briefed claim is by definition insufficient to discharge an appellant's burden to demonstrate trial court error." *Simmons Media Group, LLC v. Waykar, LLC*, 2014 UT App 145, ¶ 37, 335 P.3d 885. So while I concur in the majority opinion, I would in the alternative reject all the Mitchells' claims on appeal as "not adequately briefed, researched, or presented." *See State v. Lusk*, 2001 UT 102, ¶ 34, 37 P.3d 1103.

—————